[Civ. No. 727. Fourth Appellate District.—June 8, 1932.]

WHITNEY C. WILLIAMS, Appellant, v. JAKE LOWENTHAL, Respondent.

Ernest Klette for Appellant.

B. W. Gearhart and Lindsay & Gearhart for Respondent.

JENNINGS, J.—This action was instituted by plaintiff to recover the balance alleged to be due from defendant on account of the sale by plaintiff's assignor to defendant of a musical instrument known as an orchestrope. Defendant

was the proprietor of a restaurant in the city of Fresno. The orchestrope was an electrically operated phonograph equipped with fifty-six phonograph records. It was so arranged that it would operate upon the deposit of five-cent coins in a receptacle provided for them. The instrument was sold under a conditional sales contract whereby defendant agreed to pay therefor the sum of $1438, of which $100 was paid at the time the written agreement was executed and the balance was to be paid at the rate of $55.77 per month. The sales contract provided that until the total purchase price was paid, title should remain in the seller. In case of default in the payment of any monthly installment due from the buyer the entire purchase price was to become immediately due and payable. It was further provided that no warranty or guaranty was given unless specified in the written agreement, which was declared to constitute the entire contract between the parties. Plaintiff's complaint alleged the execution of the contract, the delivery of the instrument, default in the payment of three successive monthly payments, by reason of which default, plaintiff elected to declare the entire balance of the purchase price due and payable and prayed judgment for such balance, being the sum of $1226.86. The record shows that at plaintiff's request a writ of attachment was issued and levied upon the orchestrope. From the allegations of the complaint, it is evident that plaintiff elected to treat the transaction as a completed sale and to recover the balance due on the purchase price. Defendant's answer set up the following defenses: (1) fraud; (2) breach of an express warranty of fitness; (3) total failure of consideration, and (4) rescission. The fraud was alleged to consist of false representations by plaintiff's assignor, the seller, to defendant that the instrument would yield to defendant a revenue which would exceed the amount due monthly on the purchase price and that the instrument was in good order and would remain so for a long period of time and, if at any time it should be in need of repair, the seller would promptly repair it. The action was tried before a jury, which returned a verdict in plaintiff's favor in the sum of $250. From the judgment for such amount rendered in conformity with the verdict, plaintiff prosecutes this appeal.

The record indicates that the action was tried by defendant on the theory that fraud entered into the execution of the contract relied upon by plaintiff and the case was submitted to the jury under appropriate instructions relative to the defense of fraud. Defendant testified that he could neither read nor write, that the seller, prior to the execution of the written agreement, told him that the machine would produce a monthly revenue of $85, which would amount to approximately $30 per month in excess of the monthly installment of $55.77, that the machine was a good machine and would probably not require repair, but that if repairs should be necessary he would furnish them, that the above representations were contained in the written contract and that the absence of such representations in the written agreement was not discovered by him until after the action was instituted. ■ It requires the citation of no authority to sustain the familiar rule that the apparent consent of a party to a contract is not real when obtained through fraud. It is so declared in section 1567 of the Civil Code. But it is also elementary that representations relied upon as being fraudulent must contain the recognized essential elements of fraud. ■ When, therefore, the defendant maintained that he was told that certain representations which were made to him were contained in a written agreement and that relying upon their presence in the agreement he executed it, the defense of fraud is available to him only if the representations of whose absence he complains were in fact fraudulent. This must be true, for if such representations were not in fact fraudulent their presence in the written agreement would obviously not give rise to a cause of action nor support a defense based upon fraud. The absence of nonfraudulent representations from the written agreement could have no different effect. The statement that the machine would produce a revenue sufficient to take care of the payments due under the contract and in addition yield a profit of $30 per month to the buyer is clearly a representation of the character denominated by the decisions as "seller's talk". The law long since recognized that sellers of property in their zeal to consummate sales were prone to "puff their wares" and exaggerated statements as to the value of property offered for sale were held to be mere expressions of opinion rather

than material representations as to existing facts where the parties dealt at arm's length. In this category are representations respecting future profits to be derived by the buyer from property offered for sale (*Lee* v. *McClelland,* 120 Cal. 147 [52 Pac. 300]; *Cleason* v. *McPherson,* 175 Cal. 594 [166 Pac. 332]; *Wegerer* v. *Jordan,* 10 Cal. App. 362 [101 Pac. 1066].) The evidence fails to show that there was any relationship of trust and confidence between plaintiff's assignor and defendant and there is an absence of any showing that the representation as to future profits was not honestly made or that it was made in bad faith. Such representations therefore could not support a charge of fraud. ▮ The representation that the machine was in good order at the time the sale was made was obviously a representation as to an existing fact and if false might, under proper circumstances, furnish sufficient support to the defense of fraud assuming that the defects could not, by the exercise of ordinary diligence, have been discovered. But the evidence produced by defendant relative to this representation was not sufficient to support the claim that it was false. Defendant testified that the seller stated that it was a good machine and would probably not get out of order and that if it did he would repair it. He also testified that in the evening of the day on which the machine was installed difficulty was encountered in that the coins which caused the machine to operate did not reach the receptacle provided for them and that he summoned the seller, who repaired the defect. He further testified that during the whole period when the machine was in his possession it was out of order most of the time by reason of the failure of coins deposited by patrons of his restaurant to reach the coin receptacle. However, it appears from the record that the seller did make repairs to the machine when he was notified by defendant that it was out of order. The evidence therefore was sufficient to show that the seller performed his agreement to repair the machine when it was out of order and defendant's claim that it was not in order when installed is not supported by a fair consideration of the evidence produced at the trial.

▮ The defense of breach of warranty of fitness was pleaded in defendant's answer. It was alleged that, at the time the written agreement was entered into between the

parties, the seller, plaintiff's assignor, stated and represented to defendant that the musical instrument was in good workable condition and was suitable for the use to which defendant intended to put it and that the seller would keep the instrument in good repair and in first-class condition and in such condition that it would always operate upon the deposit of five-cent coins. It was then further alleged that the instrument was not at the time the representations were made or at any time in first-class workable condition nor in such condition that it would operate upon the deposit of coins and that the seller refused and neglected to repair the machine although he was requested so to do by defendant. The evidence which, it is claimed, supports the allegation of an express warranty of fitness rests in the testimony of the defendant, to the effect that the seller stated to him that the orchestrope was a good machine and would probably not get out of order and that if it did he would repair it. An analysis of the testimony thus presented reveals that the claim that there was an express warranty or fitness is not sustained. Manifestly, the only part of the representation which in any respect approaches a warranty of fitness or quality is the declaration that it was a good machine. The remainder of the statement relates entirely to the future and does not purport to describe the condition of the machine at the time the sale agreement was executed. As heretofore suggested, the evidence presented by the record indicates that repairs were made by the seller whenever he was notified of the necessity therefor. The use of the word "probably" in the phrase "it would probably not get out of order" effectually negatives the idea of a warranty that the instrument would not get out of order. It remains then to consider whether the statement that the instrument was a good machine constituted a warranty of quality or fitness. It is clear that the statement relied upon as amounting to a warranty, which we must assume was believed by the jury to have been made by the seller, could not constitute an express warranty. It was no more than the expression of an opinion which did not import a warranty (*Brackett* v. *Martens*, 4 Cal. App. 249 [87 Pac. 410]; *Alexander* v. *Stone*, 29 Cal. App. 488 [156 Pac. 998]; Civ. Code, sec. 1732). ▮ It is, however, generally recognized that although there is no express warranty of fitness, nevertheless the law will

imply a warranty that the article sold is reasonably adapted to the purpose for which it is purchased (35 Cyc. 408; *Lamb* v. *Otto,* 51 Cal. App. 433 [197 Pac. 147]). Section 1735 of the Civil Code, added by the legislature of 1931, declares that there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale except under certain conditions therein specified. Subdivision 1 of the section sets out the only conditions which are here applicable. This subdivision is in the following language:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

It may be conceded that, notwithstanding the absence of an express warranty of fitness, nevertheless the circumstances presented by the evidence were such that a warranty that the instrument was fit for the purpose for which it was sold was raised by implication of law. The difficulty which then presents itself is to discover from the evidence that there was a breach of such implied warranty. Defendant's testimony was to the effect that the machine failed to operate on deposit of coins on the same day that it was installed, that during the time it remained in the restaurant it failed to operate on deposit of coins more than half the time. But the evidence also shows that the machine when delivered had merely a slot for coin deposits and that a few days after it was installed, defendant purchased from plaintiff's assignor under separate contract coin boxes which were installed in various places in defendant's restaurant. Defendant testified that the same difficulty was encountered with the boxes as with the machine. No evidence was offered which tended to show how much of the time the failure of the machine to operate was due to some defect in the coin boxes. For all that appears the failure of the machine to operate on deposit of coins may have been due entirely to some defect in the boxes after they were installed. But defectiveness in the coin boxes purchased under separate contract would not support the claim of defendant that the machine itself was defective and unfit for the purpose for which it was sold. ■

Furthermore, it is significant that although defendant testified that he continually had trouble with the machine during all of the time it was in his possession and that it was out of order most of the time, nevertheless the record shows that he made three successive monthly payments in accordance with the terms of his contract. Moreover, the evidence shows that there was neither a return of the instrument by the defendant nor an offer to return it. Such conduct on the part of the buyer is sufficient to defeat his claim of breach of an implied warranty of fitness (22 Cal. Jur. 983, sec. 60; *Union Oil Co.* v. *Purissima Oil Co.,* 181 Cal. 479 [185 Pac. 381]; *Streff* v. *Gold Medal Creamery Co.,* 96 Cal. App. 18 [273 Pac. 831]).

■ Nor is the defense of failure of consideration available to defendant. As hereinabove noted defendant had entered into a written agreement for the purchase of certain personal property. He had paid a small portion of the purchase price and agreed to pay the balance in monthly installments. After paying three such installments, he refused to make any further payments on the ground that the machine which he had agreed to purchase was useless to him because, as he said, "it wouldn't work". But the record contains no evidence that defendant ever offered to restore the machine to the seller or to plaintiff to whom the contract had been assigned by the seller. When the action was instituted defendant was in default and had neither restored nor offered to restore the property. He was, therefore, in no position to rely upon the equitable defense of failure of consideration (*Gamble* v. *Tripp,* 99 Cal. 223 [33 Pac. 851]; *Garvey* v. *Lashells,* 151 Cal. 526 [91 Pac. 498]; *Hincksman* v. *Delacour,* 47 Cal. App. 416 [190 Pac. 832]).

■ With respect to the defense of rescission it is sufficient to say that the record contains no evidence that there was any effort to rescind the agreement. No notice of rescission was given nor was there any offer to restore the machine.

■ Finally, it may be remarked that an anomalous result was achieved by the verdict of the jury in conformity with which the judgment appealed from was rendered. By their verdict in plaintiff's favor the jury found that the orchestrope was sold for the sum specified in the written agreement, to wit, the sum of $1438. As heretofore noted,

the evidence produced at the trial showed that the defendant made an initial payment of $100 when the contract was executed and thereafter paid three monthly installments of $55.77 each, making a total of such monthly payments of $167.31. The sum total of the payments made by the defendant under the terms of his contract was therefore $267.31. It is obvious that plaintiff elected to treat the transaction as a completed sale and by their verdict in plaintiff's favor the jury must have proceeded upon this theory. The effect produced by the verdict and the judgment rendered in conformity with it is that the defendant in return for the sum of $517.31 is given title to property for which he agreed to pay more than two and one-half times this sum. The defendant contends that the jury rejected the written contract and substituted in its place an oral agreement in accordance with the testimony produced by the defendant and then found that certain covenants of warranty had been breached by plaintiff's assignor and that the detriment suffered by defendant amounted to the sum of $709.55, which was subtracted from the balance of $1266.86 claimed by plaintiff, leaving the sum of $517.31 which represented the jury's estimate of the actual reasonable value of the orchestrope and that from this figure there was then subtracted the sum of $267.31 representing the total payments made by defendant, thus leaving the sum of $250 for which amount the verdict was returned. Assuming the correctness of defendant's contention with respect to covenants of warranty and the breach of them by plaintiff's assignor there is a difficulty with the contention of defendant which is immediately apparent. The action was brought to recover the balance claimed to be due on account of the purchase price. In arriving at this balance the sum total of payments made by the defendant was subtracted from the contract price. The defendant had thus been credited with the amount of the payments made by him and manifestly was not entitled to a further credit of the same amount. The suggested explanation cannot therefore be correct. A further difficulty in sustaining the judgment arises when the verdict is examined with reference to the allegations of defendant's answer and the evidence submitted by him. ■■■ One of the special defenses set up by the answer was that the plaintiff warranted that the instrument was in good workable condition and suit-

able for the uses to which defendant intended to put it. Assuming that there was an implied warranty of either quality or fitness, the measure of damages for the breach of such warranty was established by certain statutes which were in effect at the time the action was instituted and tried. These statutes are sections 3313 and 3314 of the Civil Code. The former section is in the following language: "Breach of warranty of quality of personal property. The detriment caused by the breach of a warranty of the quality of personal property is deemed to be the excess, if any, of the value which the property would have had at the time to which the warranty referred, if it had been complied with, over its actual value at that time."

Section 3314 reads as follows: "Breach of warranty of quality for special purpose. The detriment caused by the breach of a warranty of the fitness of an article of personal property for a particular purpose, is deemed to be that which is defined by the last section, together with a fair compensation for the loss incurred by an effort in good faith to use it for such purpose."

It was therefore incumbent upon the defendant first to plead the facts which the above cited sections prescribe as the basis for measuring the damages, and second, to present proof of the damages suffered by him by reason of the breach of warranty. (*Harron, Rickard & McCone* v. *Wilson, Lyon & Co.*, 4 Cal. App. 488, 498 [88 Pac. 512]; *Starr Piano Co.* v. *Martin*, 119 Cal. App. 642 [7 Pac. (2d) 383].) The defendant did neither of these things. His answer contains no allegations of facts which are sufficient to support a verdict for damages in any amount. Nor was any effort made by him to present proof of any damages sustained by him. The record contains not a scintilla of evidence respecting the "excess in value" which the property would have had. The only evidence as to value which was placed before the jury was the contract price of the instrument. This was some evidence of what the value would have been if, under defendant's theory, there had been no breach of an implied warranty of quality. But, in order that the jury might intelligently apply the correct measure of damages it was necessary 'that some evidence indicative of the actual value of the instrument at the time of its delivery should be presented to them. Nor was any evidence submitted to the

jury tending to show the "loss incurred" by defendant in his effort to use the orchestrope. As heretofore noted, the statute prescribing the measure of damages for breach of warranty of fitness for a particular purpose makes this an element necessary to be shown for a discovery of the detriment caused by a breach of warranty of fitness. In the absence of evidence relative to these necessary elements the verdict cannot therefore be correct.

For the reasons stated the judgment is reversed.

Barnard, P. J., and Marks, J., concurred.