**Frank SHORT, Appellant,**

v.

**Ralph Louis MITCHELL et ux., Appellees.**

**No. 4877.**

Court of Civil Appeals of Texas, Waco.

April 23, 1970.

duced by a false representation that it was of "sound construction." On appeal, the defendant's primary contentions are that because the alleged misrepresentation was made by a real estate agent, he is not responsible; that the representation in question was merely a statement of opinion, and not a statement of a material fact; and that the evidence is legally and factually inadequate to support findings that the representation was of a material fact, or that it was relied upon by plaintiffs, or that it was a material inducement to the transaction. We overrule these contentions, and others, and affirm the judgment.

Defendant was builder-vendor of the house, which was new when purchased by plaintiffs in May, 1963. The sale to plaintiffs was actually handled by a Mr. Reed, an employee of S. J. Guthrie Company, a real estate agency. Plaintiffs and defendant had no personal contact prior to the purchase. Plaintiffs purchased the house for $11,250 with the aid of a "G.I. Loan."

The jury found, in response to the following numbered special issues, that (1) prior to the purchase by plaintiffs, Reed represented to them "that said house was of sound construction"; (2) the representation was made by Reed "in the scope of his authority to sell said house"; (3) the representation was of a material fact; (4) the plaintiffs relied on the representation; (5) the representation was made as a material inducement to plaintiffs to purchase; (6) the representation did materially induce plaintiffs to purchase; (7) the house was not of sound construction; (8) the market value of the property, had the house been of sound construction when plaintiffs purchased it, would have been $11,250; (9) the market value of the property, in its actual condition when plaintiffs purchased it, was $3,500; (10) the plaintiffs did not discover that the house was not of sound construction until 1967; (11) by the exercise of reasonable diligence, plaintiffs could not have discovered, until 1967, that the house was not of sound construction.

Sleeper, Boynton, Burleson, Williams & Johnston, P. M. Johnston, Waco, for appellant.

Dunnam, Dunnam & Dunnam, Waco, for appellees.

## OPINION

HALL, Justice.

In this case, judgment was rendered in favor of the appellees-plaintiffs on jury findings that the purchase by them of a house from the appellant-defendant was in-

When plaintiffs first saw the house, the slab foundation, the brick siding and the roof were completed, but construction was not finished inside. They had six to twelve conversations with Reed before purchase. Mr. Mitchell testified that Reed told them that defendant was a "good builder"; that "the house was of sound nature and good workmanship"; that "I was buying a good sound house that I could live in fifteen or twenty years and still have no bad maintenance problems other than just normal"; that the house "was of sound workmanship and material"; that the house was "solid construction and it would meet all requirements of the Veterans' Administration rules and regulations and it had a good, excellent foundation on it." Mr. Mitchell said that he relied upon those statements; that each was material to his decision to buy the house; that if those representations had not been made, he and his wife would not have bought the house. He said, "I knew that (Reed) was a representative of the builder, which at that time was—as far as I'm concerned, he was—it was just the same as me talking to Mr. Short, himself. * * Naturally, I was concerned as to the construction and as to whether the house was in, you know, good, strong, solid built house * * * If it hadn't been represented as thus, I certainly wouldn't have bought the house * * * and I accepted his word."

Mrs. Mitchell testified that Reed told them that the house "was sound construction and had an excellent foundation, and he also said that it met with all V. A. requirements"; that they relied on Reed's statements and believed them to be true; that if any one of the representations had not been made, they would not have bought the house; and that their reliance upon the representations made by Reed was a cause of their purchase.

The Mitchells began having "foundation trouble" with the house in June, 1967. The testimony and photographs in evidence fully support plaintiffs' pleadings that "the house and foundation * * * began to crack and buckle, the walls began to separate from the floors, large cracks developed on the walls and ceilings of the house, * * the window casings began to crack and pull apart, the bath tub pulled away from the walls, the foundation broke from one end of the house to the other, leaving a crack through the center of same, * * * the house began to separate from the foundation, and other defects began to appear." Mr. and Mrs. Mitchell testified that wind and dirt blow into the house "under the separation of the floors and the walls and through the cracks around the windows"; that the floors are unlevel; and that the cracks in the walls change in width from time to time. The photographs show extensive structural faults and damage throughout the house, with some cracks, inside and out, that are more than one-half inch in width.

Plaintiffs' witness, Jahn, a registered professional engineer whose specialty includes concrete foundations, testified that "the entire house had split right down the middle"; that "there was a parallel crack in the wall that went completely through the house"; that the foundation is "cracked from one end to the other"; and that "the house is falling apart." He said that his investigation, which included drilling holes and taking soil samples, revealed that the foundation beams at the back of the house are resting in fill dirt that had been hauled in to fill an old creek bed; that the foundation is inadequate for this house on this soil; and that it does not meet the Veterans' Administration foundation standards (which are in evidence) in that the beams do not go at least six inches into undisturbed soil below the fill. He expressed the opinion that to properly "rectify the situation" the entire house must be rebuilt.

The defendant testified that the damages to the house and foundation are not normal, and that he has no suggestions toward making proper repairs.

■ We are not in agreement with defendant's contention that the statements

made by Reed "could not possibly amount to more than an opinion, or puff talk, or dealer's talk" as a matter of law. We believe that a statement that a new house is of sound construction necessarily relates to the existing condition of the elemental parts of the house, such as its foundation, and is therefore a representation of a present material fact. Passero v. Loew, (Tex.Civ. App., 1953, writ ref., n. r. e.) 259 S.W.2d 909, 912. If we be mistaken in this belief then, without doubt, the record in this case, as shown by the testimony recited, at least raised a fact question as to the materiality of the representation. It is our further view of that evidence that it is legally sufficient to support the jury's findings that the misrepresentation was of a material fact; that it was relied upon by plaintiffs; and that it was a material inducement to the transaction in question. Moreover, our review of the entire record convinces us that those findings are not against the great weight and preponderance of the evidence.

Defendant says that Reed was a special agent, unauthorized to make the representation in question. He relies upon the rule stated in Loma Vista Development Co. v. Johnson, 142 Tex. 686, 180 S.W.2d 922 (1944), that when the undisputed facts show that a real estate broker is authorized by a vendor merely to show the property and find a purchaser, then the broker is only a special agent as a matter of law, and the seller cannot be held liable in a fraud action for the unauthorized and unknown misrepresentations of the broker. After the *Loma Vista* decision, in the case of Humber v. Morton, (Tex.Sup., 1968) 426 S.W.2d 554, the court held that a builder-vendor, by offering a new house for sale, impliedly warrants it to be of sound construction. Defendant is thus in the position of asserting that Reed was not authorized to make an express representation of a fact which he, the defendant, was obligated by law to warrant.

In any event, we believe the evidence in this case was not undisputed on the question and presented a fact issue for the jury as to whether Reed was authorized by defendant to make the representation of sound construction. The defendant testified that he wanted the purchasers of the house in question, and of any house he built, to know that he built it in a "good and workmanlike manner"; that he would tell any purchaser that his house is "a well-built house," and is "a soundly constructed house"; that he would expect the purchaser to rely on his statement, and that he would intend for those statements to induce or help cause a purchaser to buy the house; that he sold the house in question through S. J. Guthrie Company, and "turned it over to them for them to go out and solicit a customer and bring about a sale"; that in selling a house he knows his real estate agents will tell people that the house they are selling is a sound house, he thinks they should do so, and expects them to do so; that Reed was authorized to negotiate a sale of the house for the "right price"; that he had no objection to Reed telling plaintiffs that the house in question was a "good, sound house," and that if he had been present he wouldn't have hesitated in making a statement to plaintiffs that this is "a good, sound house, its got a good foundation"; that when people buy one of his houses he realizes that they are relying upon him as a builder to see that it has a proper foundation and is properly constructed. When asked whether Reed's statement to plaintiffs that the house was built in a good workmanlike manner was made with his permission, defendant answered, "I can't answer that; I don't know about that. Technically, I don't know."

We hold that defendant's testimony is sufficient to support the jury finding that the representation of sound construction "was made by Reed in the scope of his authority to sell said house."

Defendant has other contentions. All have been duly considered and none present reversible error. They are overruled.

The judgment is affirmed.