AUTOHAUS, INC., Appellant,

v.

Raul AGUILAR, Appellee.

No. 05–89–01125–CV.

Court of Appeals of Texas,
Dallas.

June 11, 1990.

Rehearing Denied July 25, 1990.

Timothy P. Woods, Randall E. Hand, Dallas, for appellant.

Lawrence L. Mealer, Dallas, for appellee.

Before STEWART, BURNETT and
WHITTINGTON, JJ.

## OPINION

BURNETT, Justice.

Autohaus, Inc., appeals an adverse judgment in favor of Raul Aguilar on his claim arising under the Deceptive Trade Practices–Consumer Protection Act (DTPA). TEX. BUS. & COM.CODE ANN. §§ 17.41–17.63 (Vernon 1987 & Vernon Supp.1990). In four points of error, Autohaus contends that: (1) there was no evidence or insufficient

evidence to show that it represented to Aguilar that an automobile had certain characteristics, ingredients, uses, and benefits which it did not have; (2) there was no evidence or insufficient evidence to show that it represented to Aguilar that an automobile was of a particular standard, quality, or grade which it was not; (3) there was no evidence or insufficient evidence that Aguilar suffered damages in the amount of $4,038 as a result of Autohaus's misrepresentation; and (4) the trial court abused its discretion in awarding Aguilar a recovery of treble the first $1,000 of his actual damages against both Autohaus and Mercedes–Benz of North America, Inc. We sustain Autohaus's first two "no evidence" points. Accordingly, we reverse the trial court's judgment and render that Aguilar take nothing on his claim against Autohaus.

In early 1986, Aguilar went to Autohaus to look at Mercedes automobiles. A sales representative for Autohaus showed him two models. Aguilar eventually selected a Mercedes 420SEL. Because Autohaus had a limited supply of 420SEL's, it had to order one from a factory in West Germany to meet Aguilar's specifications. Problems apparently arose in the shipment of the car, delaying the car's arrival at Autohaus. Because he needed a car for immediate use in his business, Aguilar went back to Autohaus and subsequently chose a Mercedes 420SEL which had recently arrived at Autohaus. Corporate Leasing, Inc., purchased the car which Aguilar had selected and leased it to Aguilar. Aguilar was responsible for all maintenance of the car under the lease. Also, the lease provided Aguilar with an option to purchase the car at the end of four years.

Aguilar took possession of the car in early May 1986. He encountered numerous problems with the car. Aguilar's primary complaint was that the engine hesitated when he attempted to accelerate. Other problems included unstable steering, the doors not opening and closing properly, the radio breaking down twice, the air conditioner malfunctioning on numerous occasions, the odometer ceasing to function, and transmission difficulties when shifting. Aguilar took the car into Autohaus for service nineteen times over the three-year period from the time he first took possession of the car until the time of trial. Throughout this time, he continually complained about the car's hesitation problem. While most of the problems Aguilar complained of were fixed at some point, the hesitation problem was never repaired to his satisfaction.

In its points of error one and two, Autohaus contends that there is no evidence or insufficient evidence to support the trial court's findings that it violated DTPA sections 17.46(b)(5) and 17.46(b)(7). Tex.Bus. & Com.Code Ann. § 17.46(b)(5), (7) (Vernon 1987).[1] Before Aguilar decided to order a 420SEL from the factory, he had a conversation with the Autohaus sales representative. In the following testimony, Aguilar attempted to recount his conversation with the salesman.

[AGUILAR'S COUNSEL]: To the best of your recollection, can you describe what representations [the Autohaus salesman] made to you in regard to any automobile he might have shown you at that time?

[AGUILAR]: [The salesman's] statement was of the nature that Mercedes Benz was the best engineered car in the world, and I probably would not find that I would ever encounter any mechanical

---

1. Section 17.46(b) of the DTPA in part provides:
 (b) Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:
 . . . .
 (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;
 . . . .
 (7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another[.]

difficulties. He joked about the fact that my only time loss would probably be when I would bring the car in to the agency for an oil and filter change every 7,500 miles.

[AGUILAR'S COUNSEL]: Do you recall anything else this gentleman represented to you with regard to the characteristics or qualities of the car?

[AGUILAR]: Generally that it would be a far superior product than what I had had in the past.

. . . .

[AGUILAR'S COUNSEL]: Mr. Aguilar, do you feel that the salesman that you originally talked to at Autohaus represented that the particular Mercedes that you purchased had characteristics, ingredients, uses and benefits that you later found that it did not have?

[AGUILAR]: Yes.

[AGUILAR'S COUNSEL]: Did you feel like the representative you dealt with at Autohaus represented to you that the particular Mercedes Benz that you purchased was of a particular standard, quality or grade which you later found out is was not?

[AGUILAR]: Yes.

Aguilar's testimony concerning the salesman's statement was the only evidence in the record of the representations made to Aguilar. The Autohaus salesman did not testify.

In its findings of fact, the trial court found that the Autohaus salesman made representations to Aguilar that the Mercedes 420SEL which Aguilar leased had characteristics, ingredients, uses, and benefits which it did not ultimately have. *See* TEX.BUS. & COM.CODE ANN. § 17.46(b)(5) (Vernon 1987). The trial court also found that the Autohaus salesman represented to Aguilar that the car was of a particular standard, quality, or grade when it was of another. *See* TEX.BUS. & COM.CODE ANN. § 17.46(b)(7) (Vernon 1987). The trial court concluded that based on these misrepresentations, Autohaus violated the DTPA.

 In a trial to the court, a trial court's findings of fact are reviewable for factual and legal sufficiency by the same standards as are applied in reviewing the factual and legal sufficiency of evidence supporting a jury's answers to jury questions. *RRTM Restaurant Corp. v. Keeping,* 766 S.W.2d 804, 806 (Tex.App.—Dallas 1988, writ denied); *1st Coppell Bank v. Smith,* 742 S.W.2d 454, 458 (Tex.App.—Dallas 1987, no writ). In reviewing a legal sufficiency claim, we must consider only the evidence and the reasonable inferences tending to support the trial court's finding, and disregard all evidence and inferences contrary to the trial court's finding. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex. 1987). If there is not more than a scintilla of evidence supporting the finding, the point must be sustained. In reviewing a claim of factually insufficiency, we must consider and weigh all the evidence, and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

Autohaus's basic contention in its first two points of error is that because its salesman's statement was an opinion or merely puffing, the statement was not an actionable misrepresentation under the DTPA. There has been a question of whether it is appropriate to recognize opinion and puffing as defenses or exceptions to a cause of action arising under the DTPA. *See* D. BRAGG, P. MAXWELL & J. LONGLEY, TEXAS CONSUMER LITIGATION 136–37 n. 17 (2d ed. 1983). It is well established that the legislature designed the DTPA to provide consumers with a method to combat deceptive trade practices. *Pennington v. Singleton,* 606 S.W.2d 682, 686 (Tex.1980); *Woods v. Littleton,* 554 S.W.2d 662, 665 (Tex.1977). Section 17.44 of the DTPA, in fact, provides that the DTPA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." TEX.BUS. & COM.CODE ANN. § 17.44 (Vernon 1987). In

*Smith v. Baldwin*, 611 S.W.2d 611 (Tex. 1980), the Texas Supreme Court wrote:

> The DTPA does not represent a codification of the common law. A primary purpose of the enactment of the DTPA was to provide consumers a cause of action for deceptive trade practices without the burden of proof and numerous defenses encountered in a common law fraud or breach of warranty suit.

*Smith*, 611 S.W.2d at 616. Also, neither "opinion" nor "puffing" is specifically listed as a defense anywhere in the DTPA. *Compare* TEX.BUS. & COM.CODE ANN. § 2.313 (Vernon 1968) (statement of seller's opinion or commendation listed as specific defense in the Texas U.C.C. to the creation of an express warranty).

While the DTPA does not specifically mention opinion or puffing, the Texas Supreme Court, in *Pennington*, implied that such a defense existed in holding that the "general objective of [DTPA sections 17.-46(b)(5) and 17.46(b)(7)] is to ensure that descriptions of goods or services offered for sale are accurate. Misrepresentations, so long as they are of a material fact and *not merely 'puffing' or opinion*, are nevertheless actionable...." *Pennington*, 606 S.W.2d at 687 (emphasis added). In *Pennington*, the seller of a used motor boat and trailer told the buyer that the boat and trailer recently had $500 worth of repairs done on it, making the boat and motor in "excellent condition," "perfect condition," and "just like new." *Pennington*, 606 S.W.2d at 685. The statements were false, however, because the gear housing of the motor had been cracked and inadequately repaired. The court held that these statements were misrepresentations and not merely statements of opinion or puffing. *Pennington*, 606 S.W.2d at 689.

■ Other Texas DTPA cases, while finding statements to be actionable representations rather than mere puffing or opinion, also indicated that a "puffing" or "opinion" defense would be effective in defeating a misrepresentation claim. *See, e.g., RRTM Restaurant*, 766 S.W.2d at 807 (misrepresentation is a violation of section 17.46(b)(5), "so long as the misrepresenta-

tion is not mere 'puffing' "); *Parks v. U.S. Home Corp.*, 652 S.W.2d 479, 484 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd w.o.j.) (misrepresentation is a violation of section 17.46(b)(5), "so long as the misrepresentation is not mere 'puffing' "). In *Presidio Enterprises, Inc. v. Warner Bros. Distributing Corp.*, 784 F.2d 674 (5th Cir.1986), the Fifth Circuit Court of Appeals, applying Texas law, held that a statement by motion picture producers that a soon-to-be released movie would be a "blockbuster" was mere puffing or opinion and thus was not actionable under sections 17.46(b)(5) and 17.46(b)(7) of the DTPA. *Presidio Enterprises*, 784 F.2d at 685–87. Although we have found no case in which a Texas appellate court has denied an action for misrepresentation under the DTPA because the statements constituting the misrepresentation have been found to be puffing or opinion, we hold that if the statements alleged to be misrepresentations are, in fact, only puffing or opinion, they cannot be actionable representations under the DTPA. Therefore, we must determine whether the statements by the Autohaus salesman regarding the car were puffing or opinion.

Even though the case before us is a DTPA action and not a breach of warranty or fraud case, we will analyze warranty and fraud cases in our determination of whether the statements are puffing or opinion because these cases have addressed the issue of what does and what does not constitute puffing and opinion. One consideration in determining whether a statement is puffing or opinion is the specificity of the statement. Imprecise or vague representations constitute mere opinions. *Royal Business Machines, Inc. v. Lorraine Corp.*, 633 F.2d 34 (7th Cir.1980). In *Royal Business Machines*, a company bought more than one hundred copying machines. The seller had made representations that experience and testing had shown that the frequency of repairs of the machines was "very low" and would remain so. The buyer brought suit for breach of warranty. The trial court held that the seller's representations created a warranty and that the warranty had been

breached. The court of appeals held that the representations made by the seller "lacked the specificity of an affirmation of fact upon which a warranty could be predicated. These representations were statements of the seller's opinion." *Royal Business Machines*, 633 F.2d at 42. Another case discussing the specificity of a statement is *Bickett v. W.R. Grace Co.*, 12 U.C.C.Rep. 629 (W.D.Ky.1972). In *Bickett*, a dealer's manual for its product, seed corn, listed "good blight tolerance" as a characteristic of the seed corn. The corn did not grow. The buyer sued, claiming the phrase, "good blight tolerance," created a warranty. The court held that "good" was only a general term of approval, "tolerance" did not mean immunity or an absolute condition, and the two terms taken together constituted only a statement of the seller's opinion or commendation, or pure sales talk, and puffing. *Bickett*, 12 U.C.C.Rep. at 634–35; *see also Olin v. Mathieson Chemical Corp. v. Moushon*, 93 Ill.App.2d 280, 235 N.E.2d 263 (1968) (seller's statement that explosives were "of good quality, that good results would be obtained, and that the [buyer] would be pleased with the breakage and the whole operation" was opinion or sales talk rather than matters of express warranty).

The Texas courts have routinely discussed puffing and opinion in breach of warranty and fraud cases. *See Short v. Mitchell*, 454 S.W.2d 285, 287–88 (Tex.Civ. App.—Waco 1970, writ ref'd n.r.e.). The Texas Supreme Court, in a fraud case, stated, " 'Puffery' is an expression of opinion by a seller not made as a representation of fact." *Dowling v. NADW Marketing, Inc.*, 631 S.W.2d 726, 729 (Tex.1982) (adopting definition of "puffery" given in *Gulf Oil Corp. v. Federal Trade Commission*, 150 F.2d 106, 109 (5th Cir.1945)). This Court, in *Wheeler v. Box*, 671 S.W.2d 75 (Tex.App. —Dallas 1984, no writ), also adopted the *Gulf Oil* and *Dowling* definition of puffery. *Wheeler*, 671 S.W.2d at 77.

In determining whether a statement is puffing or opinion, courts also often consider the levels of the knowledge of the buyer and seller. In *Royal Business Machines*, the court stated:

> The decisive test for whether a given representation is a warranty or merely an expression of the seller's opinion is whether the seller asserts a fact of which the buyer is ignorant or merely states an opinion or judgment on a matter of which the seller has no special knowledge and on which the buyer may be expected also to have an opinion and to exercise his judgment.

*Royal Business Machines*, 633 F.2d at 42 (citations omitted). The court then wrote, "General statements ... are generally regarded as expressions of the seller's opinion or 'the puffing of his wares' and do not create an express warranty." *Royal Business Machines*, 633 F.2d at 42. The court then went on to hold that statements made by the seller lacked specificity and thus were not actionable. The court, in finding that the statements lacked specificity, effectively ignored its "decisive test" language regarding the level of knowledge of the parties.

Texas courts also consider the amount of knowledge of the buyer compared to that of the seller. The Texas Supreme Court wrote in *United States Pipe & Foundry Co. v. City of Waco*, 108 S.W.2d 432 (Tex.1937),

> Another circumstance which is treated as indicating whether a statement is a mere expression of opinion is whether or not its correctness is a matter of which either of the parties can judge as well as the other, upon which the buyer can, and may, reasonably be expected, in the exercise of ordinary diligence, to have formed his own opinion....

> Superior knowledge of seller, in conjunction with the buyer's relative ignorance, operates to make the slightest divergence from mere praise into representations of fact effective as a warranty.

*United States Pipe & Foundry*, 108 S.W.2d at 436–37 (citations omitted); *see Valley Datsun v. Martinez*, 578 S.W.2d 485, 490 (Tex.Civ.App.—Corpus Christi 1979, no writ); *General Supply and Equipment Co. v. Phillips*, 490 S.W.2d 913, 917 (Tex.Civ.App.—Tyler 1972, writ

ref'd n.r.e.). While these cases emphasize the disparity of knowledge between the parties, the initial determination must be whether the statement made is specific enough to be an actionable misrepresentation under the DTPA. The Texas Supreme Court held in *Pennington* that "[t]he DTPA prohibits false general descriptions about [a] good, as well as misrepresentations pertaining to more specific information. Sometimes language only generally related to a product or its attributes will convey definite implications." *Pennington*, 606 S.W.2d at 687. While this language in *Pennington* might be taken to mean that all general statements violate the DTPA, we understand it to mean that only "sometimes" will general statements violate the DTPA, and thus, each general statement must be examined in its particular fact situation. We find that in the case before us, the nature of the statements as well as the circumstances in which they were made are such that they distinguish the statements from those in *Pennington*. First, *Pennington* involved a representation of the condition of a boat at the time of its sale. In the case before us, the salesman's statement involved the condition and performance of a car in the future. While misrepresentations concerning future performance are actionable under the DTPA,[2] a general statement concerning a future event should be looked at differently than a statement concerning a past or present event or condition, especially when examining the specificity of a statement involving the future performance of a car. Also, the representations of the condition of the boat as "excellent," "perfect" and "just like new" in *Pennington* are more specific than in the case before us where the representations included words such as "probably" and "joked."

In the case before us, the misrepresentations arising from the Autohaus salesman's statement could have been that the car: (1) was the best engineered car in the world; (2) probably would not have mechanical difficulties; and (3) probably would only need servicing for oil changes.

Two sentences by Aguilar was the extent of the evidence presented to show the misrepresentation by the salesman. The first possible misrepresentation is that the Mercedes automobile is the best engineered car in the world. Generally, statements that compare one product to another and claim superiority are not actionable misrepresentations. *See Shaw Equipment Co. v. Hoople Jordan Construction Co.*, 428 S.W.2d 835, 838–39 (Tex.Civ.App.—Dallas 1968, no writ). We find no actionable misrepresentation in this statement alone.

The second possible misrepresentation is that the car "probably" will not have mechanical problems. "Probably" is defined as "relatively likely but not certain." AMERICAN HERITAGE DICTIONARY 546 (1983). The use of the word "probably" qualifies the statements concerning mechanical difficulties. We cannot find an actionable misrepresentation in a statement that is so indefinite. *See Williams v. Lowenthal*, 124 Cal.App. 179, 12 P.2d 75, 78 (1932) (the use of the word "probably" in the statement that a machine probably would not get out of order effectively negates the creation of a warranty that the machine would not get out of order).

The salesman's third statement, as testified to by Aguilar, was that he "joked" that the car would "probably" only be brought in for oil changes every 7,500 miles. Again, the inclusion of the terms "probably" and "joked" establishes the generality of the statement.

Also, taken as a whole, the salesman's statement is just too general to be an actionable misrepresentation. While the Texas Supreme Court in *Pennington* held that the DTPA "prohibits false general descriptions," the Autohaus salesman's statement in the case before us does not convey any definite implications. By holding that a statement containing words such as "best," "probably," and "joked" constitutes a misrepresentation under the DTPA, salesmen would be unduly limited in saying anything about their products. Thus, we hold that such a general statement cannot be the basis of a DTPA misrepresentation. In so

---

2. *See Smith v. Baldwin*, 611 S.W.2d at 615–16.

holding, we are not disregarding the DTPA's express intention to prevent deceptive trade practices. Because we find that there is no evidence to support the trial court's findings that the Autohaus salesman's statements were actionable misrepresentations under the DTPA, we sustain Autohaus's first two "no evidence" points of error. Accordingly, we reverse the trial court's judgment.

Because of the manner of our disposition, we need not address Autohaus's other points of error.

STEWART, Justice, dissenting.

I respectfully dissent. The majority reverses the trial court's judgment in favor of appellee, Raul Aguilar, in his Deceptive Trade Practices–Consumer Protection Act [1] ("DTPA") action and renders judgment in favor of appellant, Autohaus, Inc., holding that there is "no evidence" to show that Autohaus represented to Aguilar that the Mercedes automobile which he leased had certain characteristics, ingredients, uses, and benefits which it did not have, Tex.Bus. & Com.Code Ann. § 17.46(b)(5) (Vernon 1987), or that the Mercedes automobile was of a particular standard, quality, or grade which it was not. Tex.Bus. & Com.Code Ann. § 17.46(b)(7) (Vernon 1987). The majority reaches its holding by concluding that misrepresentations which are merely "puffing" or opinion are not actionable under the DTPA. I disagree that "puffing" and opinion defenses should apply to suits pursuant to sections 17.46(b)(5) and (7) of the DTPA.

No exception or mention of "puffing" or opinion is made in section 17.46 or in any other provision of the DTPA. *Compare* Tex.Bus. & Com.Code Ann. §§ 17.41–17.63 *with* Tex.Bus. & Com.Code Ann. § 2.313(b) (Tex. UCC) (Vernon 1968). The majority analyzes common law fraud and breach of warranty cases in which courts have held that "puffing" and opinion operate as defenses. However, concerning the DTPA, the Texas Supreme Court has stated:

> The DTPA does not represent a codification of the common law. A primary purpose of the enactment of the DTPA was to provide consumers a cause of action for deceptive trade practices without the burden of proof and numerous defenses encountered in common law fraud or breach of warranty.

*Smith v. Baldwin,* 611 S.W.2d 611, 614 (Tex.1980). It would nullify this legislative purpose to impose on the DTPA the puffing defense, one of the "numerous defenses encountered in a common law fraud [and] breach of warranty suit." *See id.* Although Texas courts have mentioned "puffing" and opinion in DTPA cases, none has gone so far as to hold that the "puffing" rule enunciated in common law fraud and breach of warranty cases should be recognized in cases pursuant to sections 17.46(b)(5) and (7) of the DTPA. *See Pennington v. Singleton,* 606 S.W.2d 682, 689 (Tex.1980); *Burnett v. James,* 564 S.W.2d 407, 408–09 (Tex.Civ.App.—Dallas 1978, no writ). This Court has stated that DTPA claims are not subject to common law defenses. *Shenandoah Assoc. v. J & K Properties,* 741 S.W.2d 470, 496 (Tex.App. —Dallas 1987, no writ) (opinion on reh'g) (citing *Smith,* 611 S.W.2d at 616). Texas courts have rejected the application of a number of common law defenses to DTPA suits. *See, e.g., Alvarado v. Bolton,* 749 S.W.2d 47, 48 (Tex.1988) (doctrine of merger); *Chastain v. Koonce,* 700 S.W.2d 579, 583 (Tex.1985) (lack of intent, lack of knowledge); *Weitzel v. Barnes,* 691 S.W.2d 598, 600 (Tex.1985) (lack of intent, lack of reliance by the plaintiff); *Kennedy v. Sale,* 689 S.W.2d 890, 892–93 (Tex.1985) (lack of consideration by the plaintiff, lack of privity). The only common law defense to a DTPA claim that has been allowed so far is the requirement that a DTPA claimant mitigate his or her damages. *Town East Ford Sales, Inc. v. Gray,* 730 S.W.2d 796, 806 (Tex.App.—Dallas 1987, no writ); *Hycel, Inc. v. Wittstruck,* 690 S.W.2d 914, 924 (Tex.App.—Waco 1985, writ dism'd). Furthermore, several commentators who have considered whether representations which constitute "puffing" or opinion should be a defense under the DTPA have concluded

---

1. Tex.Bus. & Com.Code Ann. §§ 17.41–17.63 (Vernon 1987 & Vernon Supp.1990).

that it would be inappropriate to recognize such defenses. *See, e.g.,* P. KENS & S. COCHRAN, CONSUMER RIGHTS AND REMEDIES §§ 8, 32 (Texas Practice 1983); D. BRAGG, P. MAXWELL, & J. LONGLEY, TEXAS CONSUMER LITIGATION § 502 n. 17 (2d ed. 1983); TEXAS CONSUMER LAW REPORTER, February 1990, p. 33.

Although a panel of the fifth circuit court in *Presidio Enterprises, Inc. v. Warner Bros., Distributing Corp.,* 784 F.2d 674, 686 (5th Cir.1986), cited by the majority, recognized the arguments set forth above, it nevertheless held that the representations made by Warner, e.g., that its film would be a "blockbuster," were mere "puffing" or opinion and, therefore, not actionable under sections 17.46(b)(5) and (7) of the DTPA. However, *Presidio* is distinguishable from the present case because it involved "subjective opinions on aesthetic matters." *Id.* Also, the *Presidio* court stated that it was employing common law principles in that case because the legislature had not acted and had "declined several pointed invitations to regulate film distribution or otherwise bring motion picture licensing explicitly within the terms of the DTPA." *Id.* at 687.

The DTPA does not provide that its coverage is limited to representations of fact. While sections 17.46(b)(5) and (7) of the DTPA do not specify whether they relate to representations of fact or opinion, sections 17.46(b)(8), (11), and (13) are expressly limited to representations of "fact." TEX. BUS. & COM.CODE ANN. § 17.46(b)(5), (7), (8), (11) & (13) (Vernon 1987). Where the legislature has employed certain terms in one section of a statute and has excluded it in others, it should not be implied where excluded. *Smith,* 611 S.W.2d at 616. The majority, by recognizing "puffing" and opinion as defenses to causes of action brought pursuant to sections 17.46(b)(5) and (7), in effect, allows recovery only where false representations of fact are made.

The rationale for allowing puffery as a defense at common law was that buyers could not reasonably be expected to rely on such statements of opinion. However, reliance is not a prerequisite to recovery under the DTPA. *Weitzel,* 691 S.W.2d at 600. The supreme court has ruled that a representation is false, misleading, or deceptive under the DTPA if it has the capacity or the tendency to deceive even an ignorant, unthinking, credulous person. *Spradling v. Williams,* 566 S.W.2d 561, 562 (Tex. 1978). This "capacity or tendency to deceive" test reduces the effectiveness of a dealer's defense that a misrepresentation was mere "puffing." CONSUMER RIGHTS AND REMEDIES § 8. The *Pennington* court in dealing with sections 17.47(b)(5) and (7) stated:

A broad interpretation is warranted, however, due to human inventiveness in engaging in deceptive or misleading conduct. The legislature did not intend its express purpose of protecting consumers from false trade practices to be circumvented by those who would seek out loopholes in the [DTPA's] provisions.

*Pennington,* 606 S.W.2d at 688.

Sections 17.46(b)(5) and (7) are broad prohibitions against inaccurate descriptions of goods and services. *Pennington,* 606 S.W.2d at 687. Nearly any representation about a good or service can be said to relate to its characteristics, uses, benefits, or quantities. TEXAS CONSUMER LITIGATION § 3.05 (discussing section 17.46(b)(5)).

A good may lack its claimed characteristics or fail to bring about its claimed uses or benefits because it is not in good mechanical condition, or for reasons such as its design or manufacture ... when a good does not have the characteristics it is represented to have, or perform as represented, the injury is the same. There is no justification for excluding some misrepresentations and including others on the basis of the reason for their falsity.

*Pennington,* 606 S.W.2d at 687. The DTPA prohibits both false general descriptions and false specific information about a good; sometimes language only generally related to a product or its attributes will convey a definite impression. *Id.*

The majority distinguishes *Pennington* from this case by pointing out that the

misrepresentation in *Pennington* concerned the present condition of a boat motor and arguably the alleged misrepresentation in this case concerns future performance of an automobile. However, in *Smith*, the court held that it would be contrary to legislative intent expressed in section 17.44[2] of the DTPA to hold that consumers who have been misled by misrepresentations on future quality are not entitled to protection from the specific provisions on goods and services found in section 17.46(b). *Smith*, 611 S.W.2d at 614. Therefore, the distinction made by the majority is meaningless.

*Mail Box, Inc. v. Communicators, Inc.*, 703 S.W.2d 783, 785 (Tex.App.—Corpus Christi 1985, no writ), is similar to the present case. There, the appellant purchased a telephone system from the appellee, who represented that "[the system] *should require virtually no maintenance* due to its simplicity" and that "[the appellee] average[d] less than two calls per year for all the systems in Dallas." (emphasis added) *Id.* The appellant introduced ninety-four service orders covering a two and one-half year period. The court of appeals reversed the trial court's judgment and rendered judgment for the appellant, holding that there was sufficient evidence to support the jury's special answer that prior to the sale at issue, the appellee made a representation to the appellant that its equipment had characteristics, uses, or benefits which it did not have. *Id.* "Virtually" is defined as "in effect although not in fact; for all practical purposes." WEBSTER'S NEW WORLD DICTIONARY 1630 (1954). This "virtually no maintenance" representation, like the use of "probably" in the present case, qualifies the salesman's statement. Although the majority concludes that "probably" made the Autohaus salesman's statement too indefinite to be actionable, the court in *Mailbox, Inc.* allowed the consumer to recover.

In *Donwerth v. Preston II Chrysler-Dodge, Inc.*, 775 S.W.2d 634 (Tex.1989), the car salesman represented that there was nothing wrong with the brakes in a particular automobile. Donwerth introduced evidence that the brakes began "groaning" after a few months and that, within five months, Preston's own service report showed that the brakes in Donwerth's car had worn out, making the car dangerous. Also, the odometer had been rolled back. The Texas Supreme Court held that this was some evidence that the brakes were worn and defective at the time of the sale, thus supporting the jury finding that Preston represented the car was of a particular standard, quality, or grade when it was of another. *Id.* at 636.

In this case, Aguilar testified that Autohaus's salesman told him that "Mercedes is the best engineered car in the world ... [Aguilar] probably would not find that [he] would ever encounter any mechanical difficulties ... and [Autohaus's salesman] joked about the fact that [Aguilar's] only time loss would probably be when [Aguilar] would bring the car in to the agency for an oil and filter change every 7,500 miles." These statements, as testified to by Aguilar, represented that the automobile had certain characteristics, ingredients, uses, and benefits, TEX.BUS. & COM.CODE ANN. § 17.46(b)(5), and that the automobile was of a particular standard, quality, or grade. TEX.BUS. & COM.CODE ANN. § 17.46(b)(7). The record reflects that Aguilar took the automobile to Autohaus for service nineteen times over the three-year period from the time that he first took possession of the automobile until the time of trial. Although Autohaus repaired most of the problems at some point, the hesitation problem never was repaired to Aguilar's satisfaction. This constitutes some evidence that Aguilar's Mercedes automobile neither had the characteristics, ingredients, uses, and benefits represented nor was of the particular standard, quality, or grade represented. I would conclude that there is some evidence to support the trial court's judgment.

---

**2.** "This subchapter shall be liberally construed to promote its underlying purposes, which are to protect consumers against false, misleading,

and deceptive business practices...." TEX.BUS. & COM.CODE ANN. § 17.44 (Vernon 1987).