**GOLD KIST, INC., Appellant,**

v.

**Julian C. MASSEY, Appellee.**

No. 18381.

Court of Civil Appeals of Texas, Fort Worth.

Dec. 4, 1980.

Street, Swift, Brockermeyer, Bell & Ward and Edwin G. Bell, Fort Worth, for appellant.

Dunnam, Dunnam & Dunnam and W. V. Dunnam, Jr., Waco, for appellee.

## OPINION

SPURLOCK, Justice.

Gold Kist, Inc., a corporation in the business of supplying seeds, has appealed from a judgment rendered by the trial court against it in favor of Julian C. Massey, a farmer who purchased peanut seed specified to have a certain germination rate.

Massey sued to recover lost profits from the dealer and seed company for breach of warranty and for violation of the Texas Deceptive Trade Practices Act (DTPA). After a jury trial, the court rendered judgment for Massey and against the seed company and the dealer. The dealer was awarded indemnity from the seed company. Only the supplier appealed.

We affirm.

Massey sued for lost profits on his 1977 peanut crop. He purchased seed warranted in writing to have a germination (sprouting) rate of 80% from Kermit Smith, a local seed dealer who carried Gold Kist seed. When sprouting occurred, the seed produced healthy, good-producing plants, but the total number of seeds which sprouted was far less than 80% of the total seed planted. Because the total crop involved harvesting the reduced number of anticipated plants, Massey testified his profits were half of what he could have made if the seed had sprouted as warranted.

Gold Kist's first five points of error assert there was no evidence or insufficient evidence to support the jury findings to special issues 7, 8, 9, and 10. The jury found that the peanut seed in question were not 80% germinating at the time they were sold to Massey, that those seed were not 80% germinating at the time they were sold to Kermit Smith, and that the seed sold to Massey and Smith were not reasonably fit for the purpose intended.

Evidence was introduced by both parties concerning the reason that Massey's planting failed to produce a good stand. The jury was entitled to evaluate the testimony and to determine the findings. Evidence supports the jury's findings that the seeds failed to germinate, and that this failure was due to the seeds not being reasonably fit at the time they were sold to the dealer and subsequently to the farmer. Although conflicting evidence was also introduced to support the claim that the crop failure was due to a lack of moisture rather than failure of the seeds to germinate, we cannot say that the jury's findings were

against the great weight and preponderance of evidence so as to be manifestly unjust.

■ Gold Kist's sixth point of error asserts that peanut farmers, including plaintiff Massey, should not have been allowed to testify that the peanut seed did not germinate and were bad seed, because such testimony invaded the jury's province, was conclusive and speculative, and because the witnesses were not qualified as experts. Some of the witnesses testimony to this effect was not challenged at the time it was presented to the court. Each of the farmers called as a witness, including the one called by Gold Kist, testified as to his years of experience in peanut farming, the amount of ground he farmed, peanut farming practices, and at least one referred to different ways of obtaining knowledge about growing peanuts. Practical experience is an acceptable way of gaining expertise. The trial court did not abuse its discretion in permitting the testimony of these witnesses as experts. *McDonald v. Webb*, 510 S.W.2d 670 (Tex.Civ.App.—Corpus Christi 1974, no writ); *Air Shields, Inc. v. Spears*, 590 S.W.2d 574 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.). Gold Kist's sixth point of error is overruled.

■ Gold Kist next asserts that the jury findings to special issues 11 and 12 were unsupported by evidence or were against the great weight and preponderance of the evidence. These findings were that the failure of the seed to be 80% germinating (as found by the jury's answers to other special issues) caused Massey to lose net profits in 1977 in the amount of $7,500.00. Massey testified specifically as to his expenses, earnings, and lost profits, as well as his methods of calculation. His figures were sufficient to support a higher figure for lost profits than the jury's findings of $7,500.00, especially since he spent between $5,000.00 and $6,000.00 on the seed alone. These points of error are overruled.

■ Gold Kist's final points of error assert that there was no evidence or insufficient evidence to support the jury's findings of violation of the Texas Deceptive Trade Practices Act and the award of attorneys' fees as authorized by that Act. Gold Kist alleged that the language of that Act is so vague that Gold Kist was deprived of its constitutional protections since it could not know what actions would be violations under the DTPA.

Section 17.46(b)(5) and (b)(7) of that Act reads:

"(b) Except as provided in Subsection (d) of this section, the term ' "false, misleading, or deceptive acts or practices" ' includes, but is not limited to, the following acts:

" . . .

"(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;

" . . .

"(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
 . . . ."

This language is adequately specific and did not deprive Gold Kist of notice of actions which are violations under the Act. Each bag of seed was tagged and warranted to be at least 80% germinating. The jury's findings are consistent with violations of DTPA.

■ Sec. 17.50A. of DTPA, on Damages: Defenses, as it read when this cause of action arose, provided for the award of actual damages, attorneys' fees and court costs when the defendant (here Gold Kist) had proved that the action was the result of an error made in good faith. Gold Kist obtained a jury finding that any germination rate below 80% resulted from a bona fide error on its part. Assuming that the sales to both Smith and Massey were made after May 23, 1977, the effective date of this now replaced section of the DTPA, Massey's recovery is limited to actual damages, attorneys' fees and court costs. These

bases of recovery are to compensate the plaintiff for his actual losses and are not penal in nature. It was only actual damages, plus attorneys' fees, that Massey obtained by the judgment. Gold Kist's final points of error are overruled.

Each point of error has been considered and overruled. The judgment of the trial court is affirmed.