NO. 07-06-0305-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 12, 2007

_____

JOSEPH C. GODDARD, III, APPELLANT

V.

NORTHHAMPTON HOMEOWNERS ASSOCIATION, INC., APPELLEE

_____

FROM THE 288TH DISTRICT COURT OF BEXAR COUNTY;

NO. 2005-CI-06424; HONORABLE KAREN H. POZZA, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant, Joseph C. Goddard, III (Goddard), appeals the denial of a motion to strike deemed admissions; the granting of a summary judgment in favor of Northhampton Homeowners Ass'n, Inc. (Homeowners); and the denial of a no-evidence summary judgment filed by Goddard. We affirm.

Factual and Procedural Background

In 1984, the developer of the Northhampton subdivision filed, in the deed records of Bexar County, a Declaration of Covenants, Conditions, and Restriction and the By-laws of the Northhampton Homeowners Association. The Homeowners levied annual assessments, payable in monthly installments, to cover the maintenance and needs of the Homeowners' management of the common grounds and other matters. In 2003, Goddard purchased property within the subdivision. For calendar year 2003, the annual assessment against the Goddard property was $480.00, payable at $40.00 per month. In 2004, the Homeowners's Board of Directors raised the annual assessment on the Goddard property to $600.00, payable at $50.00 per month. Goddard attempted to pay the assessment by payment of $40.00 per month; however, those checks were not accepted after March 2004 and were returned to Goddard. Subsequently, Homeowners filed suit attempting to foreclose their lien for unpaid assessments, monetary damages for unpaid assessments, and reasonable attorney fees.

Goddard initially attempted to hire a person, who claimed to be an attorney, to file an answer and represent Goddard throughout the litigation. Initial discovery was filed by Homeowners, which included request for admissions. Some of the request for admissions were not answered and were subsequently deemed admitted. Homeowners filed a first motion for summary judgment that the trial court granted. Goddard belatedly learned that the person he hired to represent him was not licensed to practice law and that that person had not filed a response to Homeowners's motion for summary judgment. Goddard hired new licensed counsel and an agreed order granting a new trial was entered.

2

Subsequently, Homeowners filed a second motion for summary judgment arguing that the annual assessment was proper and that, pursuant to the Declaration filed in the deed records of Bexar County, Homeowners had a valid lien on the Goddard property. Homeowners also alleged, in the motion for summary judgment, that the Board of Directors of the Homeowners had the authority to set the annual assessment under the provision of the Declaration and the By-Laws of the Homeowners, which are also filed in the deed records of Bexar County.

Goddard filed his reply alleging that the only way to raise the annual assessment was pursuant to Article VI of the Declaration and that Homeowners had failed to provide summary judgment evidence showing that the assessments were proper. Goddard then filed a counterclaim alleging that Homeowners breached the restrictive covenants contained in the Declaration, alleging that Homeowners committed an unspecified violation of section 202.004 of the Texas Property Code, requesting for declaratory relief determining whether two-thirds (2/3rds) of the property owners were required to approve a raise in the annual assessment, and seeking an award of reasonable attorney fees. Additionally, Goddard filed a no-evidence motion for summary judgment claiming that Homeowners had failed to prove that they had properly raised the annual assessment. Therefore, according to Goddard, he was entitled to judgment as a matter of law.

The trial court granted Homeowners a partial summary judgment on the issue of the assessments being due and unpaid, granted Homeowners a lien on the Goddard property, and ruled that Homeowners were entitled to foreclose on the lien and sell the property. The trial court subsequently granted a summary judgment on the issue of attorney fees for

3

Homeowners in the amount of $4,000 through trial of the action and $5,000 for each level of appeal through which the judgment may be reviewed.

Goddard's first issue contends that the trial court erred when it did not permit Goddard to strike deemed admissions. However, we will not address this issue as we have determined that the issue concerning the granting of Homeowners's summary judgment will obviate the necessity of addressing this issue. TEX. R. APP. P. 47.1.

## Summary Judgment

Summary judgments are reviewed *de novo*. Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). When conducting a *de novo* review, we apply the following standards in a traditional summary judgment:

> (1) The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts must be resolved in favor of the nonmovant.

Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997) (citing Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985)). A no-evidence summary judgment is essentially a pretrial directed verdict and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. See Aguirre v. S. Tex. Blood & Tissue Ctr., 2 S.W.3d 454, 456 (Tex.App.–San Antonio 1999, pet. denied); Roth v. FFP Operating Partners, L.P., 994 S.W.2d 190, 195 (Tex.App.–Amarillo 1999, pet. denied). We review the evidence in the light most favorable

4

to the respondent against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997); Roth, 994 S.W.2d at 195. A no-evidence summary judgment is improperly granted if the non-movant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. Roth, 994 S.W.2d at 195. When both parties move for summary judgment and the trial court grants one motion and denies the other, the appellate court reviews the summary judgment evidence of both parties, determines all questions presented, and renders the judgment that the trial court should have rendered. Bradley v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999).

Homeowners's summary judgment alleges that the assessment for the annual dues was properly set by the Board of Directors of Homeowners. Specifically, Homeowners contends that, when the Declaration provisions are read in conjunction with the By-Laws, the Board of Directors has the authority to set the annual assessment. Goddard counters that Article VI, sections 3 and 5 of the Declaration must be read to require approval by two-thirds (2/3rds) of the owners of property within the Northhampton subdivision to raise the annual assessment.

In analyzing the competing propositions, we must keep in mind that, when we are construing the restrictive covenants, the Declaration provisions are subject to the general rules of contract construction. See Pilarcik v. Emmons, 966 S.W.2d 474, 478 (Tex. 1998). In construing the language of the restrictive covenants, our task is to determine the intent of its framers. See Wilmoth v. Wilcox, 734 S.W.2d 656, 658 (Tex. 1987). Whether the relevant language is ambiguous is a question of law. See Pilarcik, 966 S.W.2d at 478.

5

Covenants, like contracts, are unambiguous as a matter of law if they can be given a definite or certain legal meaning. Grain Dealers Mut. Ins. Co. v. McKee, 943 S.W.2d 455, 458 (Tex. 1997). We are cautioned to use the words and phrases contained in the covenants in their generally accepted meaning. See Wilmoth, 734 S.W.2d at 657-58.

To support its motion for summary judgment, not including the issue of attorney fees, Homeowners presented the trial court with the following summary judgment evidence:

> 1) Declaration of Covenants, Conditions and Restrictions for Northhampton filed in Volume 3056, page 1125, Official Public Records of Real Property of Bexar County, Texas;
>
> 2) Bylaws of Northhampton Homeowners Association, recorded in Volume 3344, page 82, Official Public Records of Real Property of Bexar County, Texas;
>
> 3) Defendant's Responses to Plaintiff's Interrogatories; and
>
> 4) Affidavit of Barbara Lowry.

As both Homeowners and Goddard point to Article VI, sections 3 and 5 of the Declaration, a review of these provisions is warranted.

ARTICLE VI

COVENANT FOR MAINTENANCE ASSESSMENT

> Section 3. Basis and Maximum of Annual Assessment. Until the year beginning January 1, 1985, the maximum annual assessment for a duplex shall be Three Hundred and no/100 Dollars ($300.00) per year, and the maximum annual assessment for a fourplex shall be Six Hundred and no/100 Dollars ($600.00) per year.
>
> The Board of Directors of the Association may, after consideration of current maintenance costs and future needs of the Association, fix the annual assessment for any year at a lesser amount.

6

Section 5. Change in Basis and Maximum of Annual Assessments. Subject to the limitations of Section 3 hereof, and for the periods therein specified, the Association may change the maximum and basis of the assessments fixed by Section 3 hereof prospectively for any such period provided that any such change shall have the assent of two-thirds (2/3) of the votes of each class of Members who are voting in person or by proxy, at a meeting duly called for this purpose, written notice of which shall be sent to all Members at least thirty (30) days in advance and shall set forth the purpose of the meeting.

When reading the two provisions together, it is apparant that section 3 applies until January 1, 1985, to limit the amount of the assessments to the sums indicated. Section 5 is applicable, subject to section 3, for the periods specified in section 3. In other words, until January 1, 1985, the only way that the annual assessment could be raised is with a two-third (2/3) vote of each class of the members voting in person or by proxy. The net affect of this construction is that section 5 ceased to be operational on January 1, 1985. This appears, at first blush, to be inconsistent with an intent to have a viable homeowners association. However, when viewed in the overall scheme, as demonstrated in the Declaration and By-laws, this interpretation results in a fully operative homeowners association. Initially, there were two classes of membership, Class A and Class B. Each had voting privileges. Class A was all owners, with the exception of the developer, and each owner had one vote for each residential parcel owned. Class B membership was granted to the developer, as defined in the Declaration. Class B was entitled to three votes for each residential parcel owned and was converted to Class A membership upon the earlier of: 1) when the total votes outstanding in the Class A equal the total votes outstanding in the Class B membership; or 2) on December 31, 1984. When placed in context, it becomes clear that the purpose of sections 3 and 5 was to lock the initial

7

assessment down to the amount specified in the Declaration, for the period of time specified, unless two-thirds (2/3rds) vote of all members was received to raise the assessment.

How then could the Homeowners raise the annual assessment after December 31, 1984? To answer that inquiry, we must look to both the Declaration and to the Bylaws. Article VI, section 9 of the Declaration provides that the Board of Directors of the Homeowners shall fix the date for the commencement of the assessment. The Board is required to send notice of the annual assessment to each owner of a residential parcel located within the development. A review of the By-laws reflects that pursuant to Article VIII section 1 (b) the Board of Directors has to power "to establish, levy, assess and collect the assessments or charges provided in Article III. . . ." Article III of the By-laws provides that every person who is a record owner of a residential parcel subject to the Declaration is a member of the Homeowners. Further, the rights of membership are subject to payment of the annual and special assessments levied by the Homeowners.

A review of the Texas Property Code reveals that Chapter 202,[1] Construction And Enforcement Of Restrictive Covenants, contains the following terms:

> "Dedicatory instrument" means each governing instrument covering the establishment, maintenance, and operation of a residential subdivision, . . . . The term includes a declaration or similar instrument subjecting the real property to restrictive covenants, bylaws, or similar instruments governing the administration or operation of a property owners' association . . . .

---

[1] Neither party is arguing that the provisions of the Texas Property Code are not applicable to this subdivision.

> "Restrictive covenant" means any covenant, condition, or restriction contained in a dedicatory instrument, whether mandatory, prohibitive, permissive, or administrative.

TEX. PROP. CODE ANN. § 202.001(1) (Vernon 2007).  Homeowners proved that the dedicatory instrument was filed in the property records of Bexar County.  The By-laws of the Homeowners were also filed in the property records of Bexar County and, under the terms of the statute, become part of the dedicatory instruments that control the operation of the Homeowners.  Goddard has not challenged the validity of any of the dedicatory instruments, rather his position is that only the dedication document controls.  For the reasons stated above, we have rejected that viewpoint.  When all of the dedicatory instruments are viewed collectively, the correctness of the trial court's granting of the Homeowners's summary judgment is apparent.  Accordingly, we overrule Goddard's second contention that the trial court erred in granting Homeowners's summary judgment.

Based upon our view that the trial court was correct in granting Homeowners's summary judgment, we cannot say it was error to overrule Goddard's no-evidence motion for summary judgment.  A construction of the rights of Homeowners consistent with the grant of its summary judgment precludes a granting of Goddard's summary judgment.  Accordingly, Goddard's third contention is overruled.

Conclusion

Having overruled Goddard's contentions, the judgment of the trial court is affirmed.

Mackey K. Hancock
Justice