NO. 07-07-0289-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



JULY 25, 2007


______________________________



JIMMY REAF HOLLEY, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 69TH DISTRICT COURT OF MOORE COUNTY;



NO. 1956; HON. RON ENNS, PRESIDING


_______________________________


 

Memorandum Opinion


_______________________________



Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

 Jimmy Reaf Holley (appellant) appeals from the order for withdrawal of funds from
his inmate trust account to offset court costs assessed in his prior conviction. We dismiss
the appeal for lack of jurisdiction.

 The record before us reveals that the "Inmate Trust Account Order" was signed on
March 7, 2005. Pursuant to the Texas Rules of Appellate Procedure, appellant was
required to file his motion for new trial or notice of appeal with the clerk of the trial court no
later than 30 days after the signing of the order, or by April 6, 2005. The notice of appeal
was filed on July 11, 2007. Because the deadline to perfect an appeal was April 6, 2005,
the notice appeared untimely. Tex. R. App. P. 26.2 (stating that one must file a notice of
appeal within 30 days of the date the final order is signed, unless that deadline has been
extended by motion or rule of procedure). Furthermore, no motion (timely or otherwise)
to extend the April 6th deadline was received by this court. 

 By letter dated July 13, 2007, we directed appellant to explain why the notice of
appeal was late or why he believed it to be timely. The explanation was due by July 23,
2007. He was also told that the failure to comply with this directive would result in the
Court determining whether it had jurisdiction or not. To date, no response has been
received. 

 A timely notice of appeal is essential to invoke our appellate jurisdiction. In re
A.L.B., 56 S.W.3d 651, 652 (Tex. App.-Waco 2003, no pet.). If the notice is untimely, then
the court of appeals can take no action other than to dismiss the proceeding. Id. The
notice at bar being untimely, we dismiss the appeal for want of jurisdiction. 


 Brian Quinn

 Chief Justice


Do not publish.



="font-family: 'Arial', sans-serif">MONSANTO COMPANY, APPELLEE

_________________________________

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2003-521,581; HONORABLE RUBEN REYES, JUDGE

_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.


MEMORANDUM OPINION
 
          Appellant, Perry Heard, appeals a summary judgment granted in favor of Appellee,
Monsanto Company, that he take nothing by his claims based upon misrepresentation and
deceptive trade practices. Presenting three issues, Heard contends (1) the trial court erred
in granting Monsanto’s no-evidence motion for summary judgment; (2) the trial court erred
in granting Monsanto’s traditional motion for summary judgment; and (3) Monsanto waived
its evidentiary objections by not obtaining the trial court’s ruling on each. We affirm.
Background
          In 2001, Heard prepared to plant cotton crops on his farms in Idalou and New Deal. 
He received a brochure from Monsanto that advertised the benefits and advantages of its
new herbicide, Roundup UltraMAX™ (hereinafter “UltraMAX”). Heard had grown cotton
for nearly 50 years by 2001 and was aware of the need to control the growth of weeds in
a cotton crop. In prior years, he had used Monsanto’s Roundup Ultra™ (hereinafter
“Ultra”) with acceptable weed control results. While many of the claims contained in the
Monsanto brochure referenced the proven benefits of the entire Roundup family of
herbicides, there were a few specific references to the UltraMAX being the best herbicide
available. On the basis of these representations, Heard decided to use UltraMAX on the
cotton crops he grew on his farms.
          Before planting his 2001 cotton crop, Heard elected to plant a cover crop of wheat
in an effort to help the growing crop avoid wind damage. As the cotton grew, he acquired
UltraMAX and applied it to kill the weeds in the growing crop. After another product failed
to kill off the cover crop of wheat, Heard hoped that the UltraMAX also would be able to
achieve this goal. After application of the UltraMAX to approximately 85 acres of the Idalou
farm and approximately 585 acres of the New Deal farm, Heard observed that the weeds
were not controlled. Heard again sprayed the 85 acres of the Idalou farm with UltraMAX
about a month after the initial application, but such treatment again failed to control the
weeds.
          The 2001 crop season was extremely hot and dry. As a result, many area cotton
farmers had significant crop failures. Heard utilized a number of different herbicides
attempting to salvage his cotton crop from the weeds that were made more problematic
because of climatic conditions. Of all the products that Heard used to try to control the
weeds in his cotton crop, the only herbicide that was effective was Ultra. Heard acquired
as much of the Ultra brand herbicide as he could locate and used it on three areas of his
New Deal farm that totaled approximately 100 acres. According to Heard, on the areas
that were treated with Ultra, he obtained a kill of the wheat cover crop and weeds and was
able to harvest an acceptable quantity and quality of cotton.
          Heard’s cotton harvest for his farms was well below average for the 2001 season. 
He filed a claim for his failed crop with his crop insurance company alleging that his crop
failure was due to extreme weather during the season. His claim was denied. Following
the denial of his claim from crop insurance and after filing the instant suit, Heard filed
disaster applications with the Lubbock County Farm Services Agency, which claimed the
loss of his cotton crop was due to “extreme heat.” Each of these applications were either
“disapproved” or were not determined.
          Heard filed the instant suit alleging that Monsanto’s UltraMAX brochure contained
representations that violated the Texas Deceptive Trade Practices - Consumer Protection
Act (hereinafter “DTPA”).


 Heard claimed that he relied on these misrepresentations to his
detriment and that his reliance on Monsanto’s representations was a producing cause of
his 2001 cotton crop failure. After adequate time for discovery, Monsanto filed both
traditional and no-evidence motions for summary judgment. After Heard filed responses,
the trial court entered an order granting summary judgment in favor of Monsanto. The trial
court’s order recited that the trial court considered Monsanto’s “motions, all timely filed
responses, and the competent summary judgment evidence properly presented . . .” in
reaching its decision. Standard of Review
          When an order granting summary judgment does not specify or state the grounds
relied on, the summary judgment will be affirmed on appeal if any of the grounds presented
in the motion are meritorious. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989);
Sunshine Mining & Refining Co. v. Ernst & Young, L.L.P., 114 S.W.3d 48, 51-52
(Tex.App.–Eastland 2003, no pet.). Here, the trial court did not identify the grounds on
which it based its order granting summary judgment; therefore, Heard must assign error
and provide argument challenging each independent ground for summary judgment or the
judgment will be affirmed on any ground not raised. Wortham v. Dow Chem. Co., 179
S.W.3d 189, 198 (Tex.App.–Houston [14th Dist.] 2005, no pet.); Nabors Corp. Servs., Inc.
v. Northfield Ins. Co., 132 S.W.3d 90, 95 (Tex.App.–Houston [14th Dist.] 2004, no pet.). 
          In its motions, Monsanto argued it was entitled to summary judgment with respect
to Heard’s claims under either Rule 166a(c) or (i). See Tex. R. Civ. P. 166a(c) & (i). When
a party moves for summary judgment under both Rule 166a(c) and 166a(i), we will first
review the trial court’s judgment under the no-evidence standards of Rule 166a(i). If the
non-movant fails to produce more than a scintilla of evidence under that burden, then there
is no need to analyze whether the movant’s summary judgment proof satisfied the less
stringent Rule 166a(c) burden. East Hill Mar., Inc. v. Rinker Boat Co., 229 S.W.3d 813,
816 (Tex.App.–Fort Worth 2007, pet. denied). See also Ford Motor Co. v. Ridgway, 135
S.W.3d 598, 600 (Tex. 2004).  No-Evidence Motion for Summary Judgment
          Monsanto filed its motion for a no-evidence summary judgment challenging each
element that Heard would have had to establish to recover under his DTPA causes of
action.


 For Heard to have established his claims that Monsanto violated the DTPA, he
was required to prove that (1) he is a consumer, (2) Monsanto engaged in a false,
misleading, or deceptive act of practice that he relied on to his detriment, and (3) the false,
misleading, or deceptive act or practice was a producing cause of damages. See Tex.
Bus. & Com. Code Ann. § 17.50(a)(1) (Vernon 2002); Doe v. Boys Club of Greater Dallas
Inc., 907 S.W.2d 472, 478 (Tex. 1995). By its no-evidence motion, Monsanto contended
that Heard could not produce any evidence to support any of these elements.
          In a no-evidence summary judgment motion, the movant contends that there is no
evidence of one or more essential elements of the claim or claims for which the non-movant would bear the burden of proof at trial. Tex. R. Civ. P. 166a(i). If properly raised,
a trial court must grant the motion unless the non-movant produces competent summary
judgment evidence raising a genuine issue of material fact. Id. The non-movant is not
required to marshal its proof as the response need only point out evidence that raises a
fact issue on the challenged element. Hamilton v. Wilson, No. 07-0164, 2008 WL 820717,
at *1 (Tex. March 28, 2008). A no-evidence motion for summary judgment is essentially
a pretrial directed verdict and we apply the same legal sufficiency standard in reviewing a
no-evidence summary judgment as we apply in reviewing a directed verdict. See Mack
Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006). See also City of Keller v. Wilson,
168 S.W.3d 802, 823 (Tex. 2005); Goddard v. Northhampton Homeowners Ass’n, Inc., 229
S.W.3d 353, 356 (Tex.App.–Amarillo 2007, no pet.). We review the evidence in the light
most favorable to the respondent against whom the no-evidence summary judgment was
rendered, disregarding all contrary evidence and inferences. Goddard, 229 S.W.3d at 356,
citing Merrell Dow Pharms, Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). 
          A no-evidence contention should be sustained where (1) there is complete absence
of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving
weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove
a vital fact is no more than a scintilla; or (4) the evidence conclusively established the
opposite of a vital fact. Merrell Dow, 953 S.W.2d at 711. A no-evidence summary
judgment should not be granted if the respondent counters with more than a scintilla of
probative evidence raising a genuine issue of material fact. Medlock v. Commission for
Lawyer Discipline, 24 S.W.3d 865, 868 (Tex.App.–Texarkana 2000, no pet.); Lampasas
v. Spring Center, Inc., 988 S.W.2d 428, 432 (Tex.App.–Houston [14th Dist.] 1999, no pet.). 
We review a no-evidence summary judgment for evidence that would enable reasonable
and fair-minded jurors to differ in their conclusions. City of Keller, 168 S.W.3d at 822.
          Heard argues that Monsanto’s inclusion of two statements focusing on Roundup
UltraMAX in its brochure constitutes sufficient evidence that it engaged in false,
misleading, or deceptive acts. The brochure stated in part: “[n]o other herbicide can
control more weeds than Roundup UltraMAX” and “[w]ith Roundup UltraMAX, you are
assured of the best all-around herbicide performance you can buy.” Heard contends that
these statements are specific enough to support a cause of action under the DTPA. We
disagree.
          Heard relies on several cases in support of his position that the statements of which
he complains are actionable. We find the cases unpersuasive with regard to the
statements at issue here. In Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 503-04 (Tex.
2001), the Court found statements about sorghum seed to be actionable
misrepresentations. Summarizing the representations, the Court noted “the [plaintiff’s]
evidence reflects specific representations about [the] seed’s characteristics and specific
representations about how the [plaintiff’s] crop in particular would perform.” Id. at 503. 
The Court concluded, “viewing the evidence in a light most favorable to the jury’s findings,
we conclude that there is some evidence of misrepresentations about [the] seed’s
characteristics, quality, and grade amounting to more than mere puffing.” Id. at 504. 
Unlike the statements in Helena Chemical, the Monsanto statements on which Heard relies
simply say that UltraMAX is as good as (“no other herbicide”) or better (“best all-around
performance”) than their competitors’ (or maybe other Monsanto products).
          Likewise, the representations in Pennington v. Singleton, 606 S.W.2d 682, 687
(Tex. 1980) (condition of boat at time of sale), and Gold Kist, Inc. v. Massey, 609 S.W.2d
645, 647 (Tex.Civ.App.–Fort Worth 1980, no writ) (seed warranted to have a germination
rate of 80%), were specific representations concerning a character or quality of the product
in question. Neither case supports Heard’s argument.
          Similarly, Autohaus, Inc. v. Aguilar, 794 S.W.2d 459 (Tex.App.–Dallas 1990, writ
denied), supports the trial court’s judgment. Of the statements discussed in Autohaus, the
statement most like those in Monsanto’s brochure is the salesman’s representation that
Mercedes was the best engineered car in the world. Finding no actionable
misrepresentation in that statement, the court noted that “[g]enerally, statements that
compare one product to another and claim superiority are not actionable
misrepresentations.” Id. at 464. Likewise, the two statements made in Monsanto’s
brochure are simply statements comparing its product to those of competitors or other
Monsanto products, not statements describing particular characteristics of UltraMAX or
making specific representations about its effect on Heard’s crops. 
          Heard failed to present more than a scintilla of probative evidence raising a genuine
issue of material fact as to an essential element of his claim, to-wit: that the
representations contained in the UltraMAX brochure were actionable misrepresentations. 
Consequently, Heard’s first issue is overruled. 
Conclusion
          Our disposition of Heard’s first issue pretermits consideration of his remaining
issues. See Tex. R. App. P. 47.1. Accordingly, the trial court’s judgment is affirmed.




                                                                           Patrick A. Pirtle

                                                                                 Justice





Hancock, J., dissenting.