NO. 07-06-0402-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 18, 2008

_____

PERRY HEARD, APPELLANT

V.

MONSANTO COMPANY, APPELLEE

_____

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2003-521,581; HONORABLE RUBEN REYES, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Perry Heard, appeals a summary judgment granted in favor of Appellee, Monsanto Company, that he take nothing by his claims based upon misrepresentation and deceptive trade practices. Presenting three issues, Heard contends (1) the trial court erred in granting Monsanto's no-evidence motion for summary judgment; (2) the trial court erred

in granting Monsanto's traditional motion for summary judgment; and (3) Monsanto waived its evidentiary objections by not obtaining the trial court's ruling on each. We affirm.

## Background

In 2001, Heard prepared to plant cotton crops on his farms in Idalou and New Deal. He received a brochure from Monsanto that advertised the benefits and advantages of its new herbicide, Roundup UltraMAX™ (hereinafter "UltraMAX"). Heard had grown cotton for nearly 50 years by 2001 and was aware of the need to control the growth of weeds in a cotton crop. In prior years, he had used Monsanto's Roundup Ultra™ (hereinafter "Ultra") with acceptable weed control results. While many of the claims contained in the Monsanto brochure referenced the proven benefits of the entire Roundup family of herbicides, there were a few specific references to the UltraMAX being the best herbicide available. On the basis of these representations, Heard decided to use UltraMAX on the cotton crops he grew on his farms.

Before planting his 2001 cotton crop, Heard elected to plant a cover crop of wheat in an effort to help the growing crop avoid wind damage. As the cotton grew, he acquired UltraMAX and applied it to kill the weeds in the growing crop. After another product failed to kill off the cover crop of wheat, Heard hoped that the UltraMAX also would be able to achieve this goal. After application of the UltraMAX to approximately 85 acres of the Idalou farm and approximately 585 acres of the New Deal farm, Heard observed that the weeds were not controlled. Heard again sprayed the 85 acres of the Idalou farm with UltraMAX

2

about a month after the initial application, but such treatment again failed to control the weeds.

The 2001 crop season was extremely hot and dry. As a result, many area cotton farmers had significant crop failures. Heard utilized a number of different herbicides attempting to salvage his cotton crop from the weeds that were made more problematic because of climatic conditions. Of all the products that Heard used to try to control the weeds in his cotton crop, the only herbicide that was effective was Ultra. Heard acquired as much of the Ultra brand herbicide as he could locate and used it on three areas of his New Deal farm that totaled approximately 100 acres. According to Heard, on the areas that were treated with Ultra, he obtained a kill of the wheat cover crop and weeds and was able to harvest an acceptable quantity and quality of cotton.

Heard's cotton harvest for his farms was well below average for the 2001 season. He filed a claim for his failed crop with his crop insurance company alleging that his crop failure was due to extreme weather during the season. His claim was denied. Following the denial of his claim from crop insurance and after filing the instant suit, Heard filed disaster applications with the Lubbock County Farm Services Agency, which claimed the loss of his cotton crop was due to "extreme heat." Each of these applications were either "disapproved" or were not determined.

Heard filed the instant suit alleging that Monsanto's UltraMAX brochure contained representations that violated the Texas Deceptive Trade Practices - Consumer Protection

3

Act (hereinafter "DTPA").[1] Heard claimed that he relied on these misrepresentations to his detriment and that his reliance on Monsanto's representations was a producing cause of his 2001 cotton crop failure. After adequate time for discovery, Monsanto filed both traditional and no-evidence motions for summary judgment. After Heard filed responses, the trial court entered an order granting summary judgment in favor of Monsanto. The trial court's order recited that the trial court considered Monsanto's "motions, all timely filed responses, and the competent summary judgment evidence properly presented . . ." in reaching its decision.

## Standard of Review

When an order granting summary judgment does not specify or state the grounds relied on, the summary judgment will be affirmed on appeal if any of the grounds presented in the motion are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Sunshine Mining & Refining Co. v. Ernst & Young, L.L.P.*, 114 S.W.3d 48, 51-52 (Tex.App.–Eastland 2003, no pet.). Here, the trial court did not identify the grounds on which it based its order granting summary judgment; therefore, Heard must assign error and provide argument challenging each independent ground for summary judgment or the judgment will be affirmed on any ground not raised. *Wortham v. Dow Chem. Co.*, 179 S.W.3d 189, 198 (Tex.App.–Houston [14th Dist.] 2005, no pet.); *Nabors Corp. Servs., Inc. v. Northfield Ins. Co.*, 132 S.W.3d 90, 95 (Tex.App.–Houston [14th Dist.] 2004, no pet.).

---

[1]Tex. Bus. & Com. Code Ann. §§ 17.41-17.904 (Vernon 2002 & Supp. 2007).

In its motions, Monsanto argued it was entitled to summary judgment with respect to Heard's claims under either Rule 166a(c) or (i). *See* Tex. R. Civ. P. 166a(c) & (i). When a party moves for summary judgment under both Rule 166a(c) and 166a(i), we will first review the trial court's judgment under the no-evidence standards of Rule 166a(i). If the non-movant fails to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether the movant's summary judgment proof satisfied the less stringent Rule 166a(c) burden. *East Hill Mar.*, *Inc. v. Rinker Boat Co.*, 229 S.W.3d 813, 816 (Tex.App.–Fort Worth 2007, pet. denied). *See also Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

**No-Evidence Motion for Summary Judgment**

Monsanto filed its motion for a no-evidence summary judgment challenging each element that Heard would have had to establish to recover under his DTPA causes of action.[2] For Heard to have established his claims that Monsanto violated the DTPA, he was required to prove that (1) he is a consumer, (2) Monsanto engaged in a false, misleading, or deceptive act of practice that he relied on to his detriment, and (3) the false, misleading, or deceptive act or practice was a producing cause of damages. *See* Tex. Bus. & Com. Code Ann. § 17.50(a)(1) (Vernon 2002); *Doe v. Boys Club of Greater Dallas*

---

[2]Heard notes that Monsanto also included a number of other items for which it claimed that he presented no evidence. However, as none of these items are necessary to Heard's claims, we need not address them.

*Inc.,* 907 S.W.2d 472, 478 (Tex. 1995). By its no-evidence motion, Monsanto contended that Heard could not produce any evidence to support any of these elements.

In a no-evidence summary judgment motion, the movant contends that there is no evidence of one or more essential elements of the claim or claims for which the non-movant would bear the burden of proof at trial. Tex. R. Civ. P. 166a(i). If properly raised, a trial court must grant the motion unless the non-movant produces competent summary judgment evidence raising a genuine issue of material fact. *Id.* The non-movant is not required to marshal its proof as the response need only point out evidence that raises a fact issue on the challenged element. *Hamilton v. Wilson,* No. 07-0164, 2008 WL 820717, at *1 (Tex. March 28, 2008). A no-evidence motion for summary judgment is essentially a pretrial directed verdict and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *See Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex. 2006). *See also City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex. 2005); *Goddard v. Northhampton Homeowners Ass'n, Inc.,* 229 S.W.3d 353, 356 (Tex.App.–Amarillo 2007, no pet.). We review the evidence in the light most favorable to the respondent against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Goddard,* 229 S.W.3d at 356, *citing Merrell Dow Pharms, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997).

A no-evidence contention should be sustained where (1) there is complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving

6

weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively established the opposite of a vital fact. *Merrell Dow*, 953 S.W.2d at 711. A no-evidence summary judgment should not be granted if the respondent counters with more than a scintilla of probative evidence raising a genuine issue of material fact. *Medlock v. Commission for Lawyer Discipline*, 24 S.W.3d 865, 868 (Tex.App.–Texarkana 2000, no pet.); *Lampasas v. Spring Center, Inc.*, 988 S.W.2d 428, 432 (Tex.App.–Houston [14th Dist.] 1999, no pet.). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *City of Keller,* 168 S.W.3d at 822.

Heard argues that Monsanto's inclusion of two statements focusing on Roundup UltraMAX in its brochure constitutes sufficient evidence that it engaged in false, misleading, or deceptive acts. The brochure stated in part: "[n]o other herbicide can control more weeds than Roundup UltraMAX" and "[w]ith Roundup UltraMAX, you are assured of the best all-around herbicide performance you can buy." Heard contends that these statements are specific enough to support a cause of action under the DTPA. We disagree.

Heard relies on several cases in support of his position that the statements of which he complains are actionable. We find the cases unpersuasive with regard to the statements at issue here. In *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 503-04 (Tex. 2001), the Court found statements about sorghum seed to be actionable

7

misrepresentations. Summarizing the representations, the Court noted "the [plaintiff's] evidence reflects specific representations about [the] seed's characteristics and specific representations about how the [plaintiff's] crop in particular would perform." *Id.* at 503. The Court concluded, "viewing the evidence in a light most favorable to the jury's findings, we conclude that there is some evidence of misrepresentations about [the] seed's characteristics, quality, and grade amounting to more than mere puffing." *Id.* at 504. Unlike the statements in *Helena Chemical*, the Monsanto statements on which Heard relies simply say that UltraMAX is as good as ("no other herbicide") or better ("best all-around performance") than their competitors' (or maybe other Monsanto products).

Likewise, the representations in *Pennington v. Singleton*, 606 S.W.2d 682, 687 (Tex. 1980) (condition of boat at time of sale), and *Gold Kist*, *Inc. v. Massey*, 609 S.W.2d 645, 647 (Tex.Civ.App.–Fort Worth 1980, no writ) (seed warranted to have a germination rate of 80%), were specific representations concerning a character or quality of the product in question. Neither case supports Heard's argument.

Similarly, *Autohaus*, *Inc. v. Aguilar*, 794 S.W.2d 459 (Tex.App.–Dallas 1990, writ denied), supports the trial court's judgment. Of the statements discussed in *Autohaus*, the statement most like those in Monsanto's brochure is the salesman's representation that Mercedes was the best engineered car in the world. Finding no actionable misrepresentation in that statement, the court noted that "[g]enerally, statements that compare one product to another and claim superiority are not actionable

8

misrepresentations." *Id.* at 464. Likewise, the two statements made in Monsanto's brochure are simply statements comparing its product to those of competitors or other Monsanto products, not statements describing particular characteristics of UltraMAX or making specific representations about its effect on Heard's crops.

Heard failed to present more than a scintilla of probative evidence raising a genuine issue of material fact as to an essential element of his claim, to-wit: that the representations contained in the UltraMAX brochure were actionable misrepresentations. Consequently, Heard's first issue is overruled.

## Conclusion

Our disposition of Heard's first issue pretermits consideration of his remaining issues. *See* Tex. R. App. P. 47.1. Accordingly, the trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Hancock, J., dissenting.

9