Jeffrey B. COLLINS, Appellant,

v.

Debra Denise COLLINS, Appellee.

No. 05–09–00543–CV.

Court of Appeals of Texas,
Dallas.

May 3, 2011.

Georganna L. Simpson, Jeremy C. Martin, Simpson Martin, LLP, Dallas, TX, for Appellant.

Michelle May O'Neil, O'Neil Attorneys Family Law, Dallas, TX, for Appellee.

Before Justices MORRIS, MOSELEY, and RICHTER.

## OPINION

Opinion By Justice MOSELEY.

This appeal concerns the trial court's division of foreign assets in a divorce action between Jeffrey B. Collins (Husband) and Debra Denise Collins (Wife). On appeal, Husband contends Wife, during the pendency of the divorce, signed a settlement agreement waiving her interest in the property in exchange for $1.5 million. Husband contends the trial court abused its discretion in failing to strictly enforce the settlement agreement as a valid rule 11 agreement. For reasons set out below, we reverse the trial court's division of property and remand for further proceedings consistent with this opinion.

Husband and Wife married in 1974. Over the next twenty-three years, the couple acquired substantial assets, the source of which ultimately became the focus of investigations in both the United States and Liechtenstein. Husband was first incarcerated in 1986 on federal crimes. Within months of his imprisonment, Husband escaped and fled to Europe, where his Wife and children joined him. While in Europe, Husband and/or Wife created three entities—Royman Foundation, Silverado Foundation, and Profunda Etablissement—under the laws of Liechtenstein and funded them with cash and hard assets acquired during the marriage.

In 1989, Husband and Wife returned to the United States, where they lived together until Husband turned himself in to federal authorities in 1997. Husband was charged with various illegal financial activities and entered a plea agreement with the Department of Justice in which he received a reduced sentence in exchange for distributing $6 million in cash as well as hard assets in the Liechtenstein entities. The agreement, known as the Asset Distribution Agreement, called for $3 million to be distributed to the Department of Justice and the remaining $3 million to be divided between Wife, the parties' children, a niece, and a nephew. The agreement called for a tentative division of spe-

cific hard assets, primarily precious and semi-precious jewels, fine jewelry, and valuable coins, contained in safety deposit boxes.

Once the plea agreement was finalized, Husband refused to authorize the Liechtenstein entities to release the assets and spent the ensuing ten years fighting any distribution. During this time, Wife sold property in her possession and borrowed money from family members to support herself and her children.

In 2006, Wife filed for divorce. Some months later, the federal government seized $6 million from correspondent banks in this country under the Patriot Act. Husband then entered a settlement with the Department of Justice whereby the Department of Justice received the $3 million it was originally supposed to receive under the 1998 Asset Distribution Agreement and released the remaining $3 million. The government abandoned its claims to the safe deposit box assets.

At the time of trial, Husband was in federal prison. At trial, Wife sought a division of the assets in the safe deposit boxes. Although Wife did not have access to the boxes, she used photographs taken by her Liechtenstein lawyer, Rudolf Schachle, and a list attached to the 1998 Asset Distribution Agreement to establish their contents. (Husband, who controlled access to the boxes, had refused to allow an inventory and appraisements of the assets during the course of the divorce litigation.) Wife testified that certain, specific items were gifts to her from Husband during the marriage and were therefore her separate property while other specific items were her Husband's separate property. She sought an equal division of the remaining assets, which she said were acquired during the marriage.

On cross-examination, Wife acknowledged a July 6, 2007 written agreement signed by her Liechtenstein attorney on her behalf. The agreement, which was admitted into evidence without objection, is between Husband, Wife, and the three Liechtenstein entities (Royman, Silverado, and Profunda) and divides the $3 million released by the federal government as follows: Wife, $1.5 million; Husband, $500,000; $250,000 to each of the parties three children; and $125,000 each to a niece and nephew. In addition, Wife agreed to irrevocably waive her beneficiary position in Royman and Silverado foundations and to irrevocably waive any claims she might have against Profunda.

Only limited evidence was adduced by either party regarding the nature or structure of the Liechtenstein entities. The evidence adduced by both parties' Liechtenstein attorneys established two interests in the entities: founder's rights and beneficial rights. Wife's Liechtenstein attorney Schachle explained that the holder of founder's rights has the power to instruct the "director of the company" to sell or distribute properties, while a beneficial holder generally does not have authority to transfer property. Schachle said the director must follow those instructions or risk personal liability. The holder of the founder's rights can change the director, and Schachle testified it was a "possibility" that founder's rights could be shared between Husband and Wife. Husband's Liechtenstein attorney Christoph Bruckschweiger also testified; he compared founder's rights to shareholder's rights, explaining that "[i]f the person is the sole founder or sole shareholder, he can direct the director to do as he wants."

With respect to the contents of the safe deposit boxes, Schachle testified it was his understanding the properties were owned by Profunda, and Profunda was controlled by Husband as the holder of the founder's rights. Likewise, Bruckschweiger testi-

fied the establishment generally owns the property, although he testified the holder of the founder's rights to Profunda is "not really clear, but they have been subject to various lawsuits which have been interrupted for the moment." Finally, Bruckschweiger was asked "[u]nder Liechtenstein law, what is the affect [sic] of [the July 6, 2007] agreement with regard to Debra Collins' interest in the foundations and establishment?" Bruckschweiger responded, "That she's no more a beneficiary in those entities."

At the conclusion of the evidence, Wife asked that the contents of the safe deposit boxes be divided according to Wife's testimony. Husband argued the contents had been divided by virtue of the July 6, 2007 agreement under which Wife waived her beneficial interest and received $1.5 million.

After hearing the evidence, the trial court awarded to Wife as her sole and separate property "all sums of cash on deposit as a result of the parties['] Settlement Agreement dated July 6, 2007 in the approximate sum of $1,500,000.00 at the time of distribution, a copy of which is attached hereto as Exhibit A" (emphasis omitted) as well as fifty percent of the net proceeds from the sale of the contents of the safe deposit boxes in Liechtenstein. Additionally, the trial court confirmed that certain items in the safe deposit boxes were Wife's separate property. A similar provision was made for Husband. Attached to the modified final decree of divorce was a copy of the July 6, 2007 settlement agreement.

In addition to dividing the safe deposit assets, the trial court ordered Husband to turn over to Wife fifty percent of all founder's rights and beneficial interest in the Liechtenstein entities and to execute certain documents to direct the entities to inventory the property, sell it in a commercially reasonable fashion, and to distribute the net proceeds equally to Husband and Wife.

On appeal, Husband argues the July 6, 2007 settlement agreement is a valid Rule 11 agreement that the trial court had a ministerial duty to enforce. He contends that the trial court's findings of fact that some of the property is community or Wife's separate property are contrary to the agreement and therefore without support in the record.

In response, Wife asserts the community property presumption applies to the assets in the Liechtenstein safe deposit boxes and Husband presented no evidence showing the assets were anything but community property. She asserts the settlement agreement did not change the character of the assets because (1) its purpose was to "effectuate the division of funds" under the 1998 Asset Distribution Agreement and (2) it fails to meet the elements of a partition and exchange agreement.

▆▆ Before addressing the issue, we consider a preliminary argument raised by Wife that Husband "waived error for failing to plead" the settlement agreement as an affirmative defense. Texas Rule of Civil Procedure 94 requires a party to set forth affirmatively any matter constituting an avoidance or an affirmative defense. Tex.R. Civ. P. 94. Generally, an affirmative defense is waived if it is not pleaded. *Phillips v. Phillips*, 820 S.W.2d 785, 789 (Tex.1991). However, an unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating that both parties understood the issue was in the case, and the other party failed to make an appropriate complaint. *Emerson Elec. v. Am. Permanent Ware*, 201 S.W.3d 301, 309 (Tex. App.-Dallas 2006, no pet.). To determine whether an issue was tried by consent, the

reviewing court must examine the record, not for evidence of the issue, but rather for evidence of trial of the issue. *Id.*

Assuming the existence and effect of the settlement agreement was an affirmative defense that needed to be pleaded, the record nevertheless establishes the issue was tried by consent. In his opening statements, Husband's counsel raised the issue of the agreement and its effect on the division of property. The agreement was admitted into evidence without objection. Both Husband and Wife, as well as their Liechtenstein attorneys, were asked questions about the agreement, including its effect on Wife's interests. Finally, Husband's counsel argued the effect of the agreement during closing statements. At no time did Wife's counsel raise the lack of a pleading. Consequently, we conclude Husband has not waived error for failing to plead the agreement as an affirmative defense.

We next address Wife's argument that the agreement fails to meet the requirements of a partition and exchange agreement. It is unclear what Wife contends is the effect of this argument. To the extent she is asserting the agreement is invalid for this reason, she made no such argument below and, more importantly, she sought to enforce the provisions that benefitted her. Regardless, Husband is not arguing the agreement is a partition and exchange agreement; he contends it is a valid rule 11 agreement. Wife has not presented any authority nor has she argued that parties in the midst of a divorce may only reach an agreement as to property or interests in property by partition and exchange. We reject her contention and turn to the merits of Husband's complaint.

■ Rule 11 provides that "[u]nless otherwise provided in these rules, no agreement between attorneys or parties touch-ing upon any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." Tex.R. Civ. P. 11.

Here, the agreement was in writing, signed by the parties' attorneys with the parties' express authorization, and was admitted without objection as evidence at trial. Further, the agreement was entered into during the pendency of the divorce and disposes of assets in which the parties have or claim an interest; consequently, it touches upon an issue in this suit. Further, the trial court partially enforced the agreement and referenced it in—and attached it to—the final decree of divorce. Because the agreement meets all requirements of the rule, we conclude it is a valid rule 11 agreement.

■ Having so determined, we must next decide the meaning of the agreement. In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker,* 650 S.W.2d 391, 393–94 (Tex.1983). To achieve this objective, courts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless. *Id.* No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Id.*

■ The agreement at issue here provided in relevant part as follows:

### Preamble

Provided that the United States will release a part amount of USD 3 million of the USD 4,318,319.10 seized by warrant dated 5 July 2006 of the United States District Court Southern District of Indiana on the inter-bank account of

Centrum Bank with Deutsche Bank in New York, that amount of USD 3 million shall be distributed in accordance with the following provisions:

1. Debra Collins shall receive the amount of USD 1.5 million.

2. Jeffrey Collins shall receive the amount of USD 500,000.00.

3. The sons Shaun, Joshua and Matthew Collins shall receive amounts of USD 250,000.00 each. . . .

4. Amounts of USD 125,000.00 each (for a total of USD 250,000.00) shall remain reserved for Erin and Russell Collin. . . .

\*　　\*　　\*

6. Debra, Shaun, Joshua, and Matthew Collins Shall irrevocably waive their position as beneficiaries of Royman Foundation, Vaduz.

7. Debra, Shaun, Joshua, and Matthew Collins shall irrevocably waive any claims that they might have against Etablissement Profunda, Vaduz.

8. Debra Collins shall irrevocably waive her position as beneficiary of Silverado Foundation, Vaduz.

9. Should Etablissement Profunda prevail in their lawsuit against Liechtenstein Landesbank AG, Vaduz (06 CG.2006.223), Debra Collins shall receive from the assets of Etablissement Profunda the Chopard Happy Diamonds watch and earrings to fit, if existent.

Wife argues the intent of this agreement was to effectuate the division of funds under the 1998 Asset Distribution Agreement and did not affect her interest in the safety deposit box assets. She relies on the preamble as well as the absence of any language specifically referencing the safe deposit assets to support her argument. We cannot agree.

The preamble provides that should the $3 million be released by the federal government, the monies should be distributed "in accordance with the following provisions." Those provisions include not only a specific division of sums but Wife's irrevocable waiver to her beneficial position in Royman and Silverado and any claims against Profunda. The agreement may well have been precipitated by Wife's desire to obtain the funds she was supposed to receive when Husband reached his original plea agreement with the federal government years earlier. That does not, however, negate her expressed intent in the other provisions relating to her position as beneficiary of the foundations and her claims against Profunda. Considering the entire agreement, we conclude it encompasses the safe deposit box assets and any other assets for which Wife claims an interest.

Having concluded the agreement is valid, we now address its meaning in light of the evidence adduced at trial. We begin with Profunda. Wife's Liechtenstein attorney testified Profunda owned the assets in the safe deposit boxes. Similarly, Husband's Liechtenstein attorney testified that generally an establishment in Liechtenstein owns the assets, and the evidence showed that Profunda is an establishment. Consequently, the uncontroverted evidence established that the safe deposit box assets were owned by Profunda.

■ Assets belonging to a third party are not part of the marital estate. *Cf. Vallone v. Vallone,* 644 S.W.2d 455, 458 (Tex.1982) (explaining that unless corporation is spouses's alter ego, court may only award a spouse's interest in the corporation, not specific corporate property); *McKnight v. McKnight,* 543 S.W.2d 863, 867–68 (Tex.1976) (agreeing with lower court's holding that trial court had no authority to divide spouse's partnership assets; court could only divide spouses's

partnership interest). To the extent any of the trial court's findings of fact are to the contrary, they are unsupported by the evidence. Because the assets were not part of the marital estate, they were not subject to division by the trial court and the trial court erred in dividing these assets.

The evidence did establish, however, that two types of interests exist in the Liechtenstein entities: founder's rights and beneficial rights. To the extent Wife argues she retained either of these interests with respect to Profunda, we cannot agree. In the agreement, Wife expressly and irrevocably waived any claim she might have against Profunda, which like her Husband, was a party to the agreement. By waiving any claim, she gave up any beneficial interest she had as well any claim to founder's rights. This conclusion finds some support in Provision 9, which provided that Wife would receive from Profunda's assets a watch and earrings, if Profunda prevailed in a lawsuit. If Wife retained any interest in Profunda assets generally under the agreement, there would have been no need to identify this specific asset. *See Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex. 1996) (parties to contract intend that each clause should have an effect). Because Wife waived any claim against Profunda, we conclude the trial court erred in ordering Husband to turn over 50 percent of the founder's rights and beneficiary interest in Profunda to Wife.

As for Silverado and Royman foundations, the evidence suggested that neither had any assets. However, because the extent of the assets were unknown at the time of trial due to Husband's refusal to allow them to be examined and inventoried, we will address the Settlement Agreement's impact on those foundations.

In the Settlement Agreement, Wife irrevocably waived her "position as beneficiary" in both foundations. Given the agreement's express wording, we conclude she has waived her beneficial interests in both entities; however, this language cannot be read to include a waiver of founder's rights. Schachle testified that it was "a possibility" that founder's rights could be shared, although there was no evidence to explain the implications of holding founder's rights without holding beneficial rights. Based on the evidence before us and the express wording of the Settlement Agreement, we conclude the trial court erred in ordering Husband to turn over fifty percent of the beneficial interest in Silverado and Royman foundations.

■ Having concluded the trial court erred in (1) dividing the safety deposit contents as part of the marital estate, (2) ordering Husband to turn over founder's rights and beneficial rights in Profunda, and (3) ordering Husband to turn over beneficial rights in Silverado and Royman, we next consider whether the error caused rendition of an improper judgment. Wife asserts Husband failed to show such error. We disagree.

The trial court divided assets with potential substantial value that were not a part of the marital estate. The trial court also improperly awarded interests in the Liechtenstein entities, as described above, to Wife in violation of the Rule 11 agreement. Given the error, we cannot conclude the trial court's overall disposition of property had only a de minimum effect on a just and right division.

■ When error is committed in the division of property upon divorce, a court of appeals is not permitted to either render a different division or to remand only certain portions of the marital property for a new division; rather, it must remand the entire community estate for a new division.

*See Jacobs v. Jacobs,* 687 S.W.2d 731, 733 (Tex.1985). Therefore, we reverse the trial court's final decree of divorce only with respect to the division of property and remand the cause to the trial court for a new division of the community estate. We affirm that portion of the final decree granting the parties' divorce.