

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00136-CV

| | | |
|---|---|---|
| Paul Kramer and PK Industries d/b/a Castlegate Homes | § | From the 352nd District Court |
| | § | of Tarrant County (352-227900-07) |
| v. | § | November 21, 2012 |
| Melissa and Scot Hollmann | § | Opinion by Justice McCoy |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

It is further ordered that Appellants, Paul Kramer and PK Industries d/b/a Castlegate Homes, shall pay all costs of this appeal, for which let execution issue.

SECOND DISTRICT COURT OF APPEALS

By_____
Justice Bob McCoy



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00136-CV

PAUL KRAMER AND PK
INDUSTRIES D/B/A CASTLEGATE
HOMES

APPELLANTS

V.

MELISSA AND SCOT HOLLMANN

APPELLEES

----------

## FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In nine issues, Appellants Paul Kramer and PK Industries d/b/a Castlegate Homes (collectively, Homebuilder) appeal the trial court's judgment for Appellees Melissa and Scot Hollmann. We affirm the trial court's judgment.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

The Hollmanns contacted Kramer about building a home after they saw his name and phone number on a Castlegate Homes sign. They entered into a design agreement for Castlegate, the name under which PK Industries operated, to manage the home's design and construction plan development by engaging an architect; they also entered into a residential construction contract with Castlegate to build the $2 million home. PK Industries was the project's general contractor, and Kramer was the PK Industries representative with whom the Hollmanns communicated.

As construction progressed, the house developed a moisture leak, but Kramer sent an email to the Hollmanns telling them not to worry about it because it had been fixed. After the Hollmanns moved into the house, it developed additional moisture problems involving the windows, the HVAC system, and the roof, all of which were installed by different subcontractors. The Hollmanns continued to communicate with Kramer, who assured them that he would make everything right, but after mold appeared in the house, the Hollmanns moved out.

PK Industries sued Houk Air Conditioning, Inc., and the Hollmanns intervened, suing several additional parties—including the architect, the roofing company, and the window subcontractor—for breach of contract, breach of warranty, negligence, and violations of the Deceptive Trade Practices Act

(DTPA).[2]   The Hollmanns then added Kramer as a defendant in their first amended petition and sued both PK Industries and Kramer for DTPA violations, breach of contract, breach of warranty, and negligence.   Kramer represented himself pro se.

The trial court granted partial summary judgment for some of the contractors on all of PK Industries' claims against them except for negligence, which it severed into a separate case.   The Hollmanns settled with the architect and the roofing company before trial, and the trial court dismissed them from the suit with prejudice.   The jury awarded damages to the Hollmanns after finding that (1) PK Industries breached the residential construction contract, (2) Kramer breached a warranty and engaged in a false, misleading, or deceptive act or practice, and (3) Kramer acted on PK Industries' behalf.   The trial court rendered judgment accordingly.

### III.  Sufficiency

In its seventh issue, Homebuilder complains that the evidence is legally and factually insufficient to support the jury's finding that Kramer and PK Industries violated the DTPA.   In its ninth issue, it complains that the evidence supporting the Hollmanns' DTPA claim against Kramer is legally insufficient because the claim was barred by limitations.[3]

---

[2]*See* Tex. Bus. & Com. Code Ann. § 17.46 (West 2011).

[3]When the judgment rests on multiple theories of recovery and any one theory is valid, we do not address the other theories.  *George Grubbs Enters.,*

4

## A. Legal and Factual Sufficiency Standards of Review

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). When the evidence offered

---

*Inc. v. Bien*, 881 S.W.2d 843, 851 n.7 (Tex. App.—Fort Worth 1994), *rev'd on other grounds*, 900 S.W.2d 337 (Tex. 1995). The trial court's judgment rests upon the jury's finding that Kramer breached warranties and violated the DTPA. Because the DTPA violations alone are sufficient to support the trial court's judgment, we do not reach Homebuilder's eighth issue concerning Kramer's breach of warranty liability.

to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

Absent an objection to the jury charge, the sufficiency of the evidence is reviewed in light of the charge submitted.[4] *Wal-Mart Stores, Inc. v. Sturges*, 52

---

[4]In its sixth issue, Homebuilder complains about a portion of Question No. 7, upon which the jury found that Kramer had engaged in false, misleading, or deceptive acts or practices. However, neither PK Industries nor Kramer objected to any portion of Question No. 7 before the question was submitted to the jury. Therefore, we overrule Homebuilder's sixth issue because this complaint was not preserved for our review, *see* Tex. R. App. P. 33.1; Tex. R. Civ. P. 274; *Catalanotto v. Meador Oldsmobile LLC*, No. 02-10-00044-CV, 2011 WL 754413, at *8 (Tex. App.—Fort Worth Mar. 3, 2011, no pet.) (mem. op.), and we review

S.W.3d 711, 715 (Tex. 2001); *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 71 (Tex. 2000).

## B. DTPA Violations

With regard to misrepresentations under the DTPA, the jury was asked in Question No. 7 whether Kramer engaged in any false, misleading, or deceptive act or practice that the Hollmanns relied on to their detriment and that was a producing cause of damages to the Hollmanns. The jury was instructed that "false or deceptive act or practice" means any of the following:

1. Representing that goods or services had or would have characteristics that they did not have; or

2. Representing that goods or services are or will be of a particular quality if they were of another; or

3. Failing to disclose information about goods or services that was known at the time of the transaction with the intention to induce the Hollmanns into a transaction they otherwise would not have entered into if the information had been disclosed.

The jury answered "yes" to this question. The jury also answered affirmatively Question No. 10 regarding whether Kramer acted on behalf of PK Industries when he engaged in any of the conduct found in answer to Question No. 7.

In its seventh issue, Homebuilder argues that the evidence is legally and factually insufficient to support the jury's finding that it violated the DTPA and urges us to hold that Kramer's statements to the Hollmanns were mere "puffery."

the sufficiency of the evidence to support the finding challenged in Homebuilder's seventh issue in light of this instruction.

7

In support of its insufficiency argument, it cites five specific statements made by Kramer after the Hollmanns contacted him about building a house: that the house would be a "magnificent home with a quality level rarely seen in Tarrant County," that it would be a "kick butt house," that "this is going to be a really great house," that it would be "one of the finest homes in the City," and that the Hollmanns would be "pleased as punch."

**1. Puffery**

"Misrepresentations are actionable under the DTPA 'so long as they are of a material fact and not merely "puffing" or opinion.'" *Main Place Custom Homes, Inc. v. Honaker*, 192 S.W.3d 604, 624 (Tex. App.—Fort Worth 2006, pet. denied). Puffery is "an expression of opinion by a seller not made as a representation of fact." *Dowling v. NADW Mktg., Inc.*, 631 S.W.2d 726, 729 (Tex. 1982).

Courts consider the circumstances under which a statement was made to determine whether a statement is an opinion or an actionable misrepresentation, employing a three-factor test. *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995); *Honaker*, 192 S.W.3d at 624. First, the court will examine the statement's specificity. *Honaker*, 192 S.W.3d at 624. "An imprecise or vague representation constitutes a mere opinion." *Humble Nat'l Bank v. DCV, Inc.*, 933 S.W.2d 224, 230 (Tex. App.—Houston [14th Dist.] 1996, writ denied). Second, the court will compare subject-matter knowledge of the buyer and seller, asking "whether or not [a statement's] correctness is a matter of which either of the parties can judge as well as the other," and upon which the buyer can reasonably

8

be expected, in the exercise of ordinary diligence, to have formed his own opinion. *Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459, 463 (Tex. App.—Dallas 1990, writ denied) (quoting *U.S. Pipe & Foundry Co. v. City of Waco*, 108 S.W.2d 432, 436–37 (Tex. 1937)). Third, the reviewing court will ascertain whether the representation refers to a past, present, or future condition. *Humble*, 933 S.W.2d at 230. Representations concerning past or present conditions require greater scrutiny than those concerning future conditions because predictions tend more toward opinion. *See Autohaus*, 794 S.W.2d at 464 (holding that "a general statement concerning a future event should be looked at differently than a statement concerning a past or present event or condition, especially when examining the specificity of a statement involving [future conditions]").

In *Honaker*, we addressed whether a homebuilder's statements constituted actionable misrepresentations. 192 S.W.3d at 624. Upon seeing a house under construction, the Honakers approached the builder to inquire about the property. *Id.* at 610. When the Honakers expressed concern about the house's position on a steep slope, the builder told them that the "house and lot [are] as solid as they come," and that the property "was stable and . . . there would be no problems with the house or property falling away." *Id.* The Honakers bought the house, and problems related to subsidence appeared within two years. *Id.* at 611. The Honakers sued the builder for DTPA violations, claiming that the builder's statements constituted actionable misrepresentations, *id.* at 611–12, and they prevailed at trial and on appeal. *Id.* at 624–25. Specifically, we held that the

builder's statements were affirmative assertions that the property was stable when it was not. *Id.* at 624. Additionally, we noted that the builder, having several years of experience, was in a better position to know the property's condition than the Honakers. *Id.*

As an initial matter, we hold without further discussion that the term "kick butt house" and the assertion that the Hollmanns would be "pleased as punch" are slang terms constituting an opinion and are not fact assertions. *See Autohaus*, 794 S.W.2d at 464 (holding that words with indefinite meanings do not constitute actionable misrepresentations). Likewise, we hold that Kramer's claim that the house will be "really great" is too indefinite to constitute an actionable misrepresentation. *See id.*

Kramer's remaining two statements are considerably more specific and precise than his other statements. *See Humble*, 933 S.W.2d at 230. However, they still lack the degree of specificity necessary to meet the first factor when compared to the misrepresentations in *Honaker*. *See* 192 S.W.3d at 624–25. The statements in *Honaker* were specific affirmative assertions regarding the property's condition. *Id.* at 624. Indeed, the very concerns they addressed came to fruition soon after the house was built. *Id.* at 611. Stating that the property is stable and that there will be no problems with subsidence speaks directly to a potential problem apparent even to the buyer, given the property's location on a steep slope. *Id.* at 610. In contrast, Kramer's statements are far less specific and more subjective as Kramer merely stated that the house would be

10

"magnificent" and one of the "finest." These statements speak only to subjective impressions and contain no specific representations like those found in *Honaker*.

Likewise, these statements concern subjects that could be judged equally by either party and upon which the Hollmanns could form their own opinions through ordinary diligence, unlike the knowledge necessary to determine whether a pad has been properly prepared so as to avoid subsidence—the type of disparity necessary to show that the seller had superior knowledge. *See id.* at 624. And Kramer's statements related to a future condition, tending toward opinion. *Cf. Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 503–04 (Tex. 2001) (holding that representations regarding specific future crop yields were more than puffery).

Based on the three-factor test, we hold that the statements that the house would be "a magnificent home with a quality level rarely seen in Tarrant County" and "one of the finest homes in the city" are expressions of opinion and are puffery, not representations of fact.

**2. Repairs**

Notwithstanding the specific statements Homebuilder cites, however, we cannot say that there is legally insufficient evidence to support the jury's DTPA finding with regard to any false, misleading, or deceptive act or practice by Kramer. *See City of Keller*, 168 S.W.3d at 827.

A statement falsely indicating that repairs were successful is actionable under the DTPA. *See* Tex. Bus. & Com. Code Ann. § 17.46(b)(7) (allowing

11

claims for misrepresenting service quality); *Woods v. Littleton*, 554 S.W.2d 662, 666 n.6 (Tex. 1977); *Gomez v. Moore*, No. 12-01-00261-CV, 2003 WL 21355973, at *5 (Tex. App.—Tyler June 11, 2003, no pet.) (mem. op.); *Milt Ferguson Motor Co. v. Zeretzke*, 827 S.W.2d 349, 355 (Tex. App.—San Antonio 1991, no writ). Additionally, the implied warranty to repair in a good and workmanlike manner applies to suits under the DTPA. *See* Tex. Bus. & Com. Code Ann. § 17.50(a)(2) (West 2011); *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987) (op. on reh'g). Good and workmanlike is "that quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade . . . performed in a manner generally considered proficient by those capable of judging [so]." *Melody Home Mfg.*, 741 S.W.2d at 354*.*

After the house developed a moisture leak during construction, Kramer sent the Hollmanns an email telling them, "Please don't worry about the leak that was recently fixed." When the Hollmanns informed Kramer about mold they discovered shortly after moving in, Kramer told them, "We feel very strongly we have now identified the problem. Moisture in the walls by the leak will be handled immediately and will not pose a future problem. . . . [T]he sills are the culprit." The next day, Kramer stated, "You can be sure that any nonsense associated with the resolution of all open issues will cease as of this moment." Kramer replaced the window sills, but according to Melissa Hollmann, the leaks remained.

Later that year, Kramer stated in response to an inspector's report regarding an exposed attic gas line, "I now understand that covering up this line resulted in the creation of a water leak that now has to be delt with and it will be handled." Kramer also stated that the house was "very well built and whatever minor problems that come up will always be handled." According to Melissa Hollmann, the problems with the house at the time were not minor. She said, "We had a roof that was leaking. We had mold on our walls. Our library was torn up with mold. We had water under windows . . . . It was a mess. It was serious stuff." She also said that Kramer did not fix the leak.

Twenty-two months later, the Hollmanns discovered additional mold and moisture problems. In response to the Hollmanns' complaints, Kramer claimed that he found no moisture in the walls but stated that any moisture in the walls was "caused by the irrigation system . . . spraying . . . on the house." Homebuilder replaced the suspect sprinkler heads, but the problem remained. Further, the Hollmanns' own investigation found moisture in the walls, contrary to Kramer's claim.

Finally, one month before the Hollmanns vacated the house due to mold contamination, Kramer stated that "there is nothing inherently wrong with the house." Additionally, Kramer claimed that the Hollmanns were "over-react[ing]" and stated that the problems were not serious enough to justify asking Homebuilder to buy back the house. However, Kramer contradicted this claim in two letters he wrote to the air conditioning and window subcontractors, in which

he acknowledged that the house suffered from "significant mold, air quality, and related damage problems." In one letter, Kramer even admitted that "living in a home with these conditions probably wouldn't be acceptable to anyone under any conditions." Additionally, the Hollmanns contradicted Kramer's claim at trial with expert reports and testimony showing that the house contained unhealthy mold levels requiring remediation.

Based on the above, the jury could have reasonably concluded that Kramer engaged in false, misleading, or deceptive acts or practices that the Hollmanns relied on to their detriment and that such acts were a producing cause of damages to the Hollmanns because Kramer represented that goods or services had or would have characteristics that they did not have or that goods or services were or would be of a particular quality when they were of another. *See* Tex. Bus. & Com. Code Ann. § 17.46. Further, the credible evidence supporting the finding is not so weak or so contrary to the overwhelming weight of all of the evidence that the jury's answer should be set aside. Therefore, the evidence is both legally and factually sufficient to support the finding, and we overrule Homebuilder's seventh issue.

## C. Limitations

In its ninth issue, Homebuilder argues that the evidence is legally insufficient to establish that Kramer violated the DTPA because the Hollmanns failed to sue him within the two-year DTPA statute of limitations. *See* Tex. Bus. & Com. Code Ann. § 17.565 (West 2011).

14

Statute of limitations is an affirmative defense, and a defendant bears the burden to plead, prove, and secure findings to support the defense. *See* Tex. R. Civ. P. 94 (requiring a responding party to plead limitations as an affirmative defense); *see also Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988) (holding that the affirmative defense of limitations must be proven by the asserting party). In order to prove that limitations bars a plaintiff's cause of action, a defendant must establish the date on which the plaintiff's cause of action accrued. *Intermedics, Inc. v. Grady,* 683 S.W.2d 842, 845 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

The Hollmanns brought both breach of warranty and DTPA claims against PK Industries when they intervened in PK Industries' lawsuit against Houk in November 2008. In June 2009, the Hollmanns added Kramer under the same claims. Although PK Industries pleaded limitations, Kramer, representing himself pro se, did not. Additionally, neither party asked the jury to determine the date on which the Hollmanns' causes of action accrued or objected when the charge did not ask this question.

Homebuilder claims that Kramer's unpleaded limitations defense was tried by consent during the suit's summary judgment phase. After the Hollmanns added Kramer to the suit, PK Industries moved for summary judgment, claiming that the DTPA claim was barred by limitations. PK Industries and the Hollmanns briefed the issue, and the trial court denied PK Industries' motion. Later, Kramer moved for summary judgment, claiming that the Hollmanns produced no

15

evidence that PK Industries was Kramer's alter ego, but he did not raise a limitations defense. On appeal, Homebuilder argues that PK Industries' summary judgment motion served to raise Kramer's unpleaded limitations defense and to try it by consent.

Trial by consent is an exception to the rule requiring adequate pleadings and occurs when a party allows an unpleaded claim or defense to be tried and submitted without objecting to the lack of a pleading. Tex. R. Civ. P. 67; *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991); *In re A.B.H.*, 266 S.W.3d 596, 600 (Tex. App.—Fort Worth 2008, no pet.) (op. on reh'g). An unpleaded limitations defense may be tried by consent. *See Collins v. Collins*, 345 S.W.3d 644, 648 (Tex. App.—Dallas 2011, no pet.) (holding that unpleaded affirmative defenses may be tried by consent). However, trial by consent does not apply in "doubtful situation[s]," and the record must show that the evidence was developed under circumstances indicating that both parties understood the issue was in the case. *A.B.H.*, 266 S.W.3d at 600.

Homebuilder claims that the parties understood limitations was an issue in the case as to Kramer because the parties briefed it in response to PK Industries' motion for summary judgment. However, Kramer and PK Industries are different parties, and Kramer did not brief the issue during summary judgment proceedings. Although the Hollmanns responded to PK Industries' summary judgment motion, Kramer never raised a limitations defense, nor was he a party to PK Industries' summary judgment motion. Indeed, the first time the record

16

mentions Kramer in conjunction with PK Industries' limitations defense is in Homebuilder's amended motion for a new trial. Further, the only evidence in the record indicating that Kramer even knew about PK Industries' limitations defense was the fact that the Hollmanns served him with their response to PK Industries' motion.[5] Therefore, it does not appear that both Kramer and the Hollmanns understood that the limitations defense for Kramer was an issue in the case, and we hold that Kramer's limitations defense was not tried by consent. *See id.* Because Kramer waived this affirmative defense by failing to plead it or otherwise assert it in the trial court, we overrule Homebuilder's ninth issue.

## IV. Remaining Issues

We review for an abuse of discretion Homebuilder's remaining five issues, in which it complains about the trial court's decisions to (1) sever its claims against some of the subcontractors from the Hollmanns' claims against Homebuilder, (2) restrict Kramer's cross-examination of Deepak Ahuja, the Hollmanns' construction expert, (3) admit Ahuja's testimony on repair costs, and (4) exclude photographs and (5) the construction code book that rebutted Ahuja's testimony. *See Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 235 (Tex. 2011) (stating that a trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion); *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 693 (Tex. 2007) (applying abuse of discretion standard to severance);

---

[5]PK Industries did not serve a copy of its summary judgment briefs on Kramer.

17

*Austin Rd. Co. v. Ferris*, 492 S.W.2d 64, 74 (Tex. Civ. App.—Fort Worth 1974, writ ref'd n.r.e.) (stating that the trial court has discretion to manage the scope and extent of cross-examination).

Homebuilder has failed to preserve several of these issues for our review. To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a); *see also* Tex. R. Evid. 103(a)(1). If a party fails to do this, error is not preserved, and the complaint is waived. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g). The objecting party must get a ruling from the trial court. Tex. R. App. P. 33.1(a)(2), (b). This ruling can be either express or implied. *Id.*; *Frazier v. Yu*, 987 S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet. denied).

## A. Severance

In its first issue, Homebuilder argues that the trial court abused its discretion by severing its claims against the subcontractors with whom the Hollmanns settled before trial at the "eleventh hour." However, the record does not reflect that Homebuilder objected to the severance or otherwise sought relief from the trial court's decision to sever. *See* Tex. R. App. P. 33.1(a); *Gammill v. Fettner*, 297 S.W.3d 792, 803 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that appellants failed to preserve error as to severance complaint when

18

they did not object to the severance in the trial court).  Accordingly, Homebuilder has failed to preserve this issue for review, and we overrule its first issue.

## B. Cross-Examination and Cost of Repair

In its second issue, Homebuilder asserts that the trial court abused its discretion by limiting Kramer's cross-examination of Ahuja, and in its third issue, it argues that the trial court erred by allowing Ahuja to testify regarding the cost to repair construction defects.

Kramer appeared at trial pro se, and the trial court limited his cross-examination of Ahuja after warning Kramer as follows:

> [Y]our questions are becoming repetitive.  You're spending a lot of time formulating your questions and beginning to waste time.  So when we get back from lunch, I'm going to give you 20 more minutes to examine this witness, and then you will pass the witness and we'll go to Mr. Green.

When trial resumed, Kramer passed the witness to PK Industries' counsel, who had no questions.  The trial court then asked Kramer if he had further questions, and Kramer responded that he had "no further questions."

When a party is prevented from conducting a complete cross-examination by the trial court, the party must object, obtain a ruling, and make an offer of proof as to the evidence excluded by the trial court in order to preserve error for our review.  *See* Tex. R. App. P. 33.1; *Palmer v. Miller Brewing Co.*, 852 S.W.2d 57, 63 (Tex. App.—Fort Worth 1993, writ denied); *see also Gonzalez v. Gonzalez*, No. 13-02-00202-CV, 2003 WL 21674762, at *1 (Tex. App.—Corpus Christi July 18, 2003, no pet.) (mem. op.) (holding that because appellant failed

19

to object on the basis of preclusion of full cross-examination of the appellee during trial, he failed to preserve his complaint for appellate review). Because Kramer failed to object and make an offer of proof and instead affirmatively represented that he had no further questions to ask, he failed to preserve this complaint for our review, and we overrule his second issue.

Further, an appellate brief must contain all points or issues relied upon, argument and authorities under each point or issue, and all facts relied upon for the appeal with references to the pages in the record where those facts can be found. *Weaver v. Sw. Nat'l Bank*, 813 S.W.2d 481, 482 (Tex. 1991); *see also* Tex. R. App. P. 38.1(f), (i). Although Homebuilder sets out its third issue regarding Ahuja's testimony on the cost of repairs in the "Issues Presented" section of its brief, it presents no argument, citations to the record, or citations to authority to support this issue. Therefore, we overrule Homebuilder's third issue for inadequate briefing. *See* Tex. R. App. P. 38.1(i).

## C. Photographs and Code Book

In its fourth and fifth issues, Homebuilder complains that the trial court erred by admitting into evidence only one photograph showing a space between the stone veneer and the wood frame structure of the Hollmanns' house and by excluding the rest of its photographs and by excluding a building code book adopted by the City of Colleyville, where the Hollmanns' house was built.

During trial, one of the major issues was the cause of the moisture problem that led to the development of mold. Several witnesses testified regarding the

lack of an air gap between the house's stone veneer and the wood frame structure as a potential cause of the problem, and Ahuja, the Hollmanns' expert, testified that the house was improperly constructed with no gap, causing the moisture problem.  While questioning Kramer, PK Industries attempted to introduce multiple photographs showing a one-inch gap between the stone veneer and the wood frame structure, but Kramer was able to identify the specific location depicted by the photographs in only one of the photographs.  After two unrecorded bench conferences, the trial court admitted the only photograph that Kramer was able to identify and excluded all of the others.  PK Industries did not ask to have the excluded photographs included in the record.

When Kramer offered the code book into evidence, the Hollmanns successfully objected, arguing that it had not been produced during discovery, and Kramer failed to respond to their objection.  After a recess, PK Industries' attorney argued that the code book had been made available during discovery in response to the Hollmanns' request for production, offering his response to the request as proof, which response stated that the documents were produced "subject to and without waiving the foregoing objections, none other than as produced elsewhere."  The trial court ruled that PK Industries offered insufficient evidence to prove that it had produced the code book during discovery.  Neither Kramer nor PK Industries sought to have the excluded code book included for record purposes during trial.  After the case was submitted to the jury, Kramer moved for the trial court to reopen evidence in order to introduce a City of

Colleyville ordinance referencing the code book, and the trial court denied the motion.

If error occurs in the exclusion of evidence, to preserve error, the complaining party must (1) timely object or move to admit, stating the specific ground of objection if the specific ground is not apparent from the context and (2) present a formal bill of exception to the trial court unless the substance of the excluded evidence was apparent from the context within which the questions were asked. Tex. R. App. P. 33.2; Tex. R. Evid.103(a)(2). "Appellate review of alleged improperly excluded evidence is not possible without a showing of what evidence would have been presented." *Hilliard v. Holland*, No. 02-03-00287-CV, 2004 WL 2712159, at *1 (Tex. App.—Fort Worth Nov. 24, 2004, no pet.) (mem. op.) (citing *Wade v. Comm'n for Lawyer Discipline*, 961 S.W.2d 366, 374 (Tex. App.—Houston [1st Dist.] 1997, no writ)). The trial court excluded the photographs following unrecorded bench conferences, and Homebuilder did not seek to include the photographs in the record, thereby presenting nothing for our review. *See id.* Likewise, the trial court excluded the code book, and neither Kramer nor PK Industries sought to include the code book in the record, thus presenting nothing for our review. *See* Tex. R. App. P. 33.2; Tex. R. Evid. 103(a)(2); *Hilliard*, 2004 WL 2712159, at *1. We overrule Homebuilder's fourth and fifth issues.[6]

---

[6]Further, the complaint on appeal must be the same as that presented in the trial court. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997). An

## V. Conclusion

We affirm the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

DELIVERED: November 21, 2012

---

appellate court cannot reverse based on a complaint not raised in the trial court. *Id.*  Although Homebuilder argues in part of its fifth issue that the trial court erred by excluding the code book because it was a "publicly available record" and "was addressed during depositions," we do not reach these arguments because they were not made in the trial court.  *See id.*

23